## Case No. 1,402.

### BIGGS et al. v. BARRY et al.

[2 Curt. 259.][1]

Circuit Court, D. Massachusetts. May Term, 1855.

NEW TRIAL—MISCONDUCT OF JURY — SALE — RESCISSION BY SELLER — FRAUD — STOPPAGE IN TRANSIT.

1. Where the plaintiff claimed on two distinct grounds, either of which, if found in his favor, would entitle him to a verdict, and it appeared that the jury did not consider and decide on either ground separately; but that some might have decided on one, and some on the other, the verdict was set aside.

[Cited in Glaspell v. Northern Pac. R. Co., 43 Fed. 909.]

2. If goods are sent to a forwarding merchant, to await in his hands the instructions of the purchaser, respecting any further transit, their transitus is at an end when they reach his hands, so that they cannot be stopped by the vendor.

3. To avoid a sale upon the ground that the vendees did not intend to pay for the goods, it is not enough that they knew themselves to be insolvent and had no reasonable expectation of being able to pay them when purchased; these facts may induce the jury to find a fraudulent purpose, but they are not, of themselves, sufficient.

[Cited in Parker v. Byrnes, Case No. 10,728.]
[See D'Wolfe v. Babbett, Id. 4,220.]

[At law. Trover by John Biggs and another against Michael O. Barry and others. Verdict for plaintiffs. Defendants move for new trial. Granted.]

C. B. Goodrich, for plaintiffs.
J. A. Loring, contra.

CURTIS, Circuit Justice. This was an action of trover, for a quantity of hosiery and gloves of the agreed value of $3,500. The jury found a verdict for the plaintiffs and the defendants moved for a new trial. At the trial before me, it appeared, that the plaintiffs manufactured these goods at Leicester, England, under orders given for them by a firm of Hall Brothers, who were commission and general merchants at Nottingham, England, and at New York. Pursuant to directions given by Hall Brothers, the goods when ready, were sent to Liverpool, to Edwards, Sanford & Co., who were forwarding merchants there, and who in many previous transactions, had acted for Hall Brothers in receiving and forwarding their goods. The merchandise in question was shipped by Edwards, Sanford & Co., to Boston, under bills of lading making it deliverable to their order, and which having been indorsed by them in blank, were sent to the defendants, by Hall Brothers. Hall Brothers having become insolvent before the arrival of the goods, and their price being unpaid, the plaintiffs demanded the goods of the master of the vessel in which they came, be-

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

fore they had been received by the consignees, under the bills of lading. These facts were not controverted.

The case turned on two points. 1. Whether the plaintiffs had the right to stop the goods in transitu, at the time they demanded them. 2. Whether the sale by the plaintiffs to Hall Brothers was voidable by reason of a fraud of the purchasers, in making the purchases. The fraud alleged was, that they were deeply insolvent, and knew themselves to be so, when the purchases were made, and that their intent was such, that the vendors had the right to avoid the sale and reclaim the goods. Each of these questions was submitted to the jury, with instructions as to matter of law, which will be presently stated, and with directions to consider them separately, and if either was found in favor of the plaintiffs, to render a verdict for them, otherwise to find for the defendants. By consent of parties the jury, who retired just before the adjournment of the court in the evening, were told that they might seal up their verdict, and separate, and come in and render it the next morning. When they came into court, the next day, they returned a verdict for the plaintiff, and upon motion of the defendants' counsel, and with the consent of the plaintiffs' counsel, the court inquired of them whether they had found their verdict on both, or one, and if one, which of the points put to them by the court. The foreman stated, that the jury did not take up the points separately, but took a ballot on the general question whether the plaintiffs were entitled to recover; and the jury being unanimous on that, they proceeded no further. He further said his own opinion was with the plaintiff on both points; and one of his fellows indicated that he did not agree with the foreman in that. But the court declined to hear any further statements of what passed in the jury-room, if all agreed that they did not take up and consider the two questions separately. This was assented to, and the verdict was affirmed and recorded. I am clearly of opinion the verdict should not be allowed to stand. It was the duty of the jury to consider and decide on each question separately. If they could agree that the plaintiff had the right to stop in transitu, or if they could agree that the purchase was voidable for fraud, then the plaintiffs were entitled to a verdict. But if some of them were with the plaintiffs on one point, and some on another, they agreed on nothing; and no verdict should have been rendered.

It was argued, that it did not appear they did not agree on some one point. It is true, that as they never considered the questions separately, it does not appear what the result of such a consideration would have been; and this is the very difficulty. The court is apprised that in point of fact the twelve men never did concur in opinion, and agree to

render a verdict upon either ground. What they would have done can only be conjectured; and a conjecture is not a fit basis for a judgment.

It was also urged, that the defendants should have moved to have the jury retire again and further consider their verdict; and that the court had power to send the jury out again, though they had once separated. It is not necessary to determine whether the court had that power. It did not think it proper, under the circumstances, to exercise it, and I do not consider the defendants waived any thing by not moving the court on the subject. Whether a jury shall, or shall not be directed to retire and further consider their verdict, is a matter solely under the control of the court, and to be regulated by its discretion in each case. The interposition of counsel, at such a time, is generally not permitted, and I do not think, can ever be necessary to prevent a waiver of any right to his client, unless he is called on by the court to know what he desires. At all events, in this case, there was not, in my opinion, any waiver, and the verdict must be set aside, and a new trial ordered.

With a view to this new trial, it is proper to state my opinion on the questions of law involved in the case. In reference to the right to stop in transitu, the jury were instructed that, if the goods were sent by the plaintiffs to Edwards, Sanford & Co. at Liverpool, to be there subject to the orders of the buyers, and under such circumstances that they could go further only by force of instructions to be given to Edwards, Sanford & Co., by the buyers, then the transitus was ended when the goods reached the hands of Edwards, Sanford & Co.; that a delivery to forwarding agents, employed by the buyer, to remain with them until the buyer should send orders respecting their destination. was, in legal effect, a delivery to the buyer; and the only transitus definitely contemplated when the goods left the hands of the seller, was completed, and the right to stop the goods was terminated. But if when the goods left Leicester, they were destined to a foreign port, either New York or Boston, under a consignment then already made, and Edwards, Sanford & Co. were to forward their goods on their way to their destination without further orders or instructions from the buyers, then the transitus was not ended when the goods came to Edwards, Sanford & Co., but continued until they reached the consignee in New York or Boston. On reviewing this instruction, and comparing it with the authorities, particularly with the case of Valpy v. Gibson, 4 Man., G. & S. 837, I am satisfied of its correctness, and the same instruction will be given on the new trial.

Concerning the question of fraud the jury were told, in substance, that it was not enough to enable the plaintiffs to avoid the sale, that the buyers knew themselves to be

insolvent when they made the purchase; that fraudulent conduct on their part must be proved; that if they bought, knowing they could not pay, or intending not to pay for the goods, this was a fraud; that the jury must, therefore, consider the state of mind of the buyers, and decide whether the plaintiffs had proved, that when they made the purchases in question, Hall Brothers had no expectation of paying for the goods; and that, in this point of view, no reasonable expectation was, in legal effect, no expectation; for the law did not allow men to set up and rely upon expectations which had no foundation in reason.

I am of opinion that the last clause of this instruction, which makes no reasonable expectation to be the same in legal effect, for this purpose, as no expectation, was erroneous. This is not a question of reasonable expectation, but of fraudulent purpose. It is not a question whether the grounds of their belief that they could and should pay, were sound and rational, but whether they did so believe, in point of fact. Lord v. Goddard, 13 How. [54 U. S.] 198; Com v. Eastman, 1 Cush. 221; Chamberlain v. Hoogs, 1 Gray, 172; Jones v. Howland, 8 Metc. (Mass.) 377. It is true that the jury, in considering whether an expectation to pay did in fact exist, may, and should pay much regard, to the inquiry whether any reasonable ground for such expectation existed; and if none can be discovered, it might be proper for them to find that no expectation to pay in fact existed. But it might, also, under some circumstances, be proper for them to find otherwise; they might think that an over sanguine and rash, but honest man, had trusted to appearances and built on foundations which were not reasonable, but nevertheless had an actual existence in his mind; and that though his conduct was unreasonable when measured by their judgments, and blameworthy. it was not fraudulent. This instruction, therefore, must be modified, if a new trial should be had.