HEINRICH BECKER, Respondent, *v.* CHARLES L. HALLGARTEN, et al., Appellants

The delivery of goods to the vendee, which puts an end to the state of passage, and so deprives the vendor of the right of stoppage *in transitu,* may be at a place where the former means the goods to remain until a fresh destination is given to them by orders from himself. When they have reached the place for which they were intended under the direction given by the vendor, and have come under the actual control of the vendee, the right of stoppage ceases.

The right of stoppage is defeated by the indorsement and delivery by the vendee of a bill of lading of the goods to a *bona fide* indorsee for a valuable consideration, without notice of facts on which such right would otherwise exist.

Statement of case.

W. & B. sold on credit to B. & S. at Berlin, where both firms did business, certain goods, and delivered invoices of the same. By direction of the vendees the goods were shipped to plaintiff at Bremen, B. & S. thereafter applied to G. for a loan; he agreed to make it on security of the goods and bills of lading and did make the loan "taking (as the court found) as security for repayment, these goods." B. & S. gave an order on plaintiff to hold the goods subject to order of G.; on the same day G. sent the order to plaintiff and directed him to ship them to defendants at New York; G. also wrote to defendants, advising them of the shipment through plaintiff, and requesting them to deliver the goods to S. on payment of the sum loaned with fees and expenses. In compliance with such directions, plaintiff shipped the goods to defendants, receiving duplicate bills of lading, in which he was named as shipper and defendants as consignees. One of these he sent to defendants with instructions to dispose of goods "as per instructions of" G., the others he sent to B. & S., who sent them to G., and he to the defendants. Thereafter plaintiff cabled to defendants to hold the goods, and they on receipt agreed to hold them for plaintiff's account. W. & B. assigned their claim to plaintiff, who demanded the goods of defendants, and upon their refusal to deliver, brought this action for conversion. *Held,* that plaintiff was not entitled to recover; that at no time was he the agent or representative of the vendors but up to and including the shipment acted for the vendees or G.; that assuming, by the assignment he became vested with a vendor's right of stoppage, he would not exercise it because: 1st. The shipment and consignment by the vendors ended at Bremen, and so transit was over before the goods left Germany; 2d. The transaction between the vendees and G. was effectual to pass the property to the latter and so deprived the vendors of the right of stoppage, if any otherwise existed.

Also *held* that defendants were not estopped from disputing plaintiff's title, their promise to hold, as it was at most a promise without consideration in violation of duty to their principals, and as there was no finding of any change of position on the part of plaintiff, in consequence.

The bills of lading delivered to G. and sent to defendants were not indorsed. By the Commercial Code of the German Empire the transfer of the legal title to goods covered by a bill of lading can only be made by written indorsement by the consignee. *Held,* that such law had no application; that it applies when the bill of lading is taken in the name of the vendee or of some person through whom the party claiming its benefit must make title, which was not plaintiff's position.

(Argued June 1, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made May 10, 1880, which af-

firmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was for the alleged wrongful conversion of certain goods.

The following facts appeared :

The firms of Wilhelm & Boerner, and Boas & Stern, were merchants in Berlin, Germany. Prior to August 2, 1876, Wilhelm & Boerner sold to Boas & Stern, on credit, three cases of goods, and delivered to them invoices of the same. The court found the sale was completed. By direction of Boas & Stern the goods were sent, by the vendors, in two shipments, to the plaintiff, Becker, at Bremen. Emil Goldstein was a banker in Berlin. On the 2d of August, 1876, he was applied to by Boas & Stern for a loan of 3,000 marks, and agreed to make it upon the security of the goods and bills of lading ; and it is also found that he did, on that day, make the loan, "taking as security for repayment these goods." Boas & Stern gave an order on Becker to hold them subject to the order and direction of Goldstein, and on the same day Goldstein sent the order to Becker and directed him, in writing, to send the three cases by steamer to Hallgarten & Co. (the defendants), New York. He also wrote to that firm, informing them that he had shipped " through the house of Becker," to your order and address, the goods, "and request you to deliver the same to L. Stern, of New York, on payment of 3,000 marks and fees and expenses." L. Stern, so named, was not a member of the firm of Boas & Stern. On the fourth of August, in compliance with these directions, Becker shipped the goods to the defendants, and procured duplicate bills of lading, declaring him to be the sihpper, and that they were to be delivered to Hallgarten & Co., or their assigns. One of these bills he sent to the defendants with a letter, in which, referring to the bill of lading as inclosed and to the goods described in it, he says : " You will dispose of " (them) " as per instructions of Emil Goldstein." He also sent a duplicate bill of lading to Boas & Stern, they sent it to Goldstein, and he to the defendants, with instructions similar to those before referred to. The court found that, on August 19th, " the

plaintiff, in behalf of Wilhelm & Boerner by cable to defendants, stopped the goods *in transitu*, and they having the bills of lading, thereafter agreed to hold them for plaintiff's account." On the 6th of October, 1876, Wilhelm & Boerner executed a paper in these words: "The undersigned hereby assign to Heinrich Becker, of Bremen, our claim on accepted draft for 2,500 marks, and 1,562.55 marks balance of account, with all rights unto us belonging." On the sixth of November the plaintiff demanded the goods of defendants, offering to pay their charges. The court also found that the bills of lading delivered to Goldstein and sent to defendants were not indorsed, and that by the Commercial Code of the German Empire, in force in Berlin in August, 1876, the transfer of the legal title to goods covered by a bill of lading can only be made by the written indorsement by the consignee.

Further facts appear in the opinion.

*Samuel Hand* for appellants. The plaintiff showed no title to the goods in himself, nor right of stoppage *in transitu*. A subsequent ratification by the vendors or owners would not operate to legalize a prior stoppage of the goods *in transitu* by the plaintiff. (*Bird* v. *Brown*, 4 Ex. 786; *Wood* v. *McKain*, 7 Ala. 800.) Under the circumstances there is no right of stoppage *in transitu* in the original vendors, but the transit ended with delivery to the purchaser's agent. (*Briggs* v. *Barrow*, 2 Curt. 259; *Valpy* v. *Gibson*, 4 M. G. & S. 837; *Dixon* v. *Baldwin*, 5 East, 185; *Leeds* v. *Wright*, 3 B. & P. 320; *Rowe* v. *Pickford*, 8 Taunt. 83; *Wilcox Plate Co.* v. *Green*, 72 N. Y. 17; Benjamin on Sales, 777, § 846; *Lickbarrow* v. *Mason*, 1 Smith's L. C. 1089–1093, 1102; *Newhall* v. *Vargas*, 13 Me. 105; *Noble* v. *Adams*, 7 Taunt. 59; *James* v. *Griffin*, 2 M. & W. 633.) But whatever were the original rights of the vendors, as between them and B. & S., the purchaser, they were *pro tanto* defeated as to Goldstein, a *bona fide* advancer of moneys on the security of the goods, which were pledged, and to whose consignee the bill of lading was made out by his and B. & S.'s direction. (Benjamin on Sales,

865; *Marine Bk.* v. *Fisk,* 71 N. Y. 353; *Dows* v. *Exchange Bk.,* 91 U. S. 618; *Lee* v. *Kimball,* 45 Me. 172.) The law of Germany, that the legal title to the goods could only be transferred by indorsement by the consignee of the bill does not apply here. (*Merchants' Bank* v. *Transportation Co.,* 69 N. Y. 373; *The City Bk.* v. *The R., W. & O. R. R. Co.,* 44 N. Y. 136.) The fact that Goldstein may have advanced money before actually receiving the bill does not defeat his claim. (*Dunbrow* v. *McDonald,* 5 Bosw. 130.) There was nothing here authorizing the finding of a conversion by defendants. (*Hall* v. *Robinson,* 2 Comst. 203.) Plaintiff, under the circumstances, was bound to offer the defendant an indemnity bond to secure the latter against loss, in case he was proceeded against by other claimants. (Benjamin on Sales, § 861, par. 5; *Ball* v. *Liney,* 48 N. Y. 6; *Rogers* v. *Weir,* 34 id. 463; *Gillett* v. *Roberts,* 57 id. 28; *Carroll* v. *Nix,* 51 Barb. 212.)

*Lewis Sanders* for respondent. The answer admits a bailment of the goods in suit by plaintiff to defendants, and the defense by way of avoidance was insufficient. (*Barnard* v. *Kobbe,* 3 Daly, 37.) The goods were in transit when stopped. (*Harris* v. *Platt,* 17 N. Y. 250; 1 Smith's Lead. Cas. marg. 884, 906; *Holbrook* v. *Vose,* 6 Bosw. 76, 111; *Colton* v. *Railton,* 6 B. & C. 422; *Atkins* v. *Colby,* 20 N. H. 154; *Markwardt* v. *Creditors,* 7 Cal. 213; *Cohen* v. *Campbell,* 6 Casey, 254; *Aguirre* v. *Parmlee,* 22 Conn. 473; *Cohen* v. *Campbell,* 6 Casey, 254; *Small* v. *Moate,* 9 Bing. 574; *Shendon* v. *New Quay Co.,* 4 C. B. [N. S.] 618; *Shuster* v. *McKeller,* 7 E. & B. 704; *Dixon* v. *Yates,* 5 B. & A. 313; *Jenkins* v. *Usborne,* 8 Scott, N. R. 505; *S. C.,* 7 M. & C. 678; *Francheris* v. *Henriques,* 6 Abb. [N. S.] 251; *Hauterman* v. *Bock,* 1 Daly, 366.) Absolute refusal by defendants to deliver goods on demand with offer to pay all their charges is a waiver of the lien for advances and estops defendants from alleging any other ground of refusal on the trial than the one first given. (1 Addison on Torts, 540; *Dows* v. *Morewood,* 10 Barb. 187.) The refusal, on a ground other than a lien for advances, is a

waiver of the lien and a tender for the advances, and is con-clusive evidence of a conversion. . (*Dirks* v. *Richards*, 4 M. & G. 574; *Weeks* v. *Goode*, 6 C. B. [N. S.] 367; *Altersol* v. *Jester*, 13 Ark. 437; *Pecket* v. *McKay*, 2 Blackf. [Ind.] 465.) The non-existence of a firm nullifies a contract made in their name as principals. (*Kingsford* v. *Merry*, 1 Hurlst. & Norm. 503.) There was no money advanced on the faith of the bills of lading. (*Howland* v. *Woodruff*, 60 N. Y. 75; *Weaver* v. *Barden*, 49 id. 294; *Coddington* v. *Bay*, 20 Johns. 644, 646, 647; *Dickerson* v. *Tillinghast*, 4 Paige, 232; *Trow* v. *Ferguson*, 11 Ala. [N. S.] 880–885; *Ratcliff* v. *Sangston*, 18 Md. 383; *Ingram* v. *Morgan*, 4 Humph. 661; *Powell* v. *Jeffries*, 5 Ill. 390.) Transfer of bill of lading, without indorsement, carries only the title of transferrer, subject to all equities against him. (*Stanton* v. *Eager*, 33 Mass. 476; *Ackerman* v. *Humphrey*, 1 Carr. & Payne, 56; *Jenkins* v. *Usborne*, 7 M. & G. 700; *Winslow* v. *Norton*, 29 Me. 421; 1 Daniel on Negot. Instr. 544, § 729, p. 533, § 741; *Schumaker* v. *Ely*, 24 Penn. St. 325; *Terry* v. *Allis*, 16 Wis. 479; *Hedges* v. *Sealey*, 9 Barb. 218; *Boeker* v. *Mulla*, 16 Mo. 180; *Haskell* v. *Mitchell*, 53 Me. 470; *The Indiana Nat. Bank* v. *Colgate*, 4 Daly, 49; *Meyerstein* v. *Barker*, L. R., 2 Com. Pl. 45; *Short* v. *Simpson*, L. R., 1 Com. Pl. 255.) Defendants are estopped from disputing plaintiff's title. (*Rodeman* v. *Clark*, 46 N. Y. 357; *Kinney* v. *Kiernan*, 49 id. 168; *Morris* v. *Rexford*, 18 id. 552; *Miner* v. *Bradley*, 22 Pick. 457; *Voorhees* v. *Earl*, 2 Hill, §§ 292–3; *Jenkins* v. *Simpson*, 14 Me. 304; *Hill* v. *Green*, 4 Pick. 114; *Dezell* v. *Odell*, 3 Hill, 218; *Cont. Nat. Bank* v. *Nat. Bank of Comm.*, 50 N. Y. 585, 590.)

DANFORTH, J. Becker was at no time in the course of these transactions the agent or representative of the vendors. Until and including the shipment of the goods he was the agent of Boas & Stern, the vendees, or of Goldstein. He obeyed, as was proper, at the different stages of the affair, first one and then the other of these parties. If his special character ceased with the shipment, he neither entered the employ of the ven-

dors, nor did he act under any instruction received from them. The finding, therefore, that in behalf of the vendors he stopped the goods, is without evidence to support it. Assuming, in the next place (for the purpose only of this discussion), that by the assignment above set out, he became vested with a vendor's right to stop goods while on their way to an insolvent purchaser, it is one which, we think, cannot be exercised in this case, for the reasons: *First*, that the transit was over before the goods left Germany. They were sent by the vendors to Becker, as the vendees' agent at Bremen. The shipment was preceded by, and was in consequence of, a request by B. & S. to the vendors, " to send the boxes " to Becker " at our disposition." Therefore, on the 28th of July, informing Becker of the shipment to him, " at the request of and for account of Messrs. B. & S. of Berlin," they write, we have sent you part of the goods in question and " request you to carry out the further instruction of said parties concerning the same ; " and in the next letter, communicating the shipment of the balance, they say, " and request you hereby to let Messrs. B. & S. have the further disposal thereof." It is obvious, then, that the impulse impressed upon the goods by the vendors carried them only to Bremen. Some other action was necessary on the part of the vendees before they moved again. They, at that point, transferred the goods to Goldstein, and made them, in the hands of Becker, subject to his order. The trial court finds not only a " taking of the goods by him as security," but that Boas & Stern " directed Becker to hold and ship the goods according to Goldstein's directions." This was done. The bills of lading were issued in favor of strangers to the vendees, and who represent a party having actual custody and the right of disposition. The shipment and the consignment by the vendors ended at Bremen. At that place new interests attached, in promotion of which the goods were sent forward. The only consignment by W. & B. was to Becker at Bremen.

It has been held that the delivery to the vendee, which puts an end to the state of passage, may be at a place where he means the goods to remain until a fresh destination is commu-

nicated to them by orders from himself. ( *Valpy* v. *Gibson*, 4 C. B. 837; *Biggs* v. *Barry*, 2 Curt. 259; *Bolton* v. *L. & Y. R. W. Co.*, L. R., 1 Com. Pl. 439; also *Dixon* v. *Baldwen*, 5 East, 175; and this case is approved in *Covell* v. *Hitchcock*, 23 Wend. 611.) In the case before us, it is plain that they had reached the place for which .they were intended, under the direction given by the vendors, and had come under the actual control of the vendees. *Dixon* v. *Baldwin* (*supra*) is commented upon in *Harris* v. *Pratt* (17 N. Y. 249), and distinguished from the rule thought applicable to the facts of that case. There the suspense in transportation was temporary, and to be resumed at a future time in the direction already given by the vendors. But, in the case before us, not only is the actual fact like that in *Dixon* v. *Baldwin*, but if the detention at Bremen was originally intended only to give the vendees an opportunity to determine by which of several routes, or at what time, as in *Harris* v. *Pratt*, the goods should go on, we have the additional vital circumstance before adverted to of a complete possession and control by the vendees, and its transfer to a third party, who also took the actual possession and control of the goods, and has since retained them. Neither *Harris* v. *Pratt* nor any of the other cases cited by the appellant go to the extent of upholding the vendor's lien in such a case.

*Second.* The transaction between Goldstein and the vendees was effectual to pass the property to him and so deprive the vendors of the right of stoppage if it otherwise existed. That right may always be defeated by indorsing and delivering a bill of lading of the goods to a *bona fide* indorsee for a valuable consideration, without notice of the facts on which the right of stoppage would otherwise exist. This was held in *Lickbarrow* v. *Mason* (2 T. R. 63), and has since been deemed established. It does not impair the force of this position that the money was in fact advanced before the delivery of the bill of lading. The goods were in the possession of Goldstein when he paid over the money. The bill of lading was promised and was part of the consideration on which the money was paid, but more than all he had the right, under the authority given to him by B. & S.,

to take the bill of lading in any form, and it was made out for his benefit. (*City Bk.* v. *R. W. & O. R. R.*, 44 N. Y. 136.) Nor is it material, unless made so by the German law (*infra*), that the bill of lading was not indorsed. It was not necessary that it should be. Hallgarten & Co. were Goldstein's agents, subject to his control, and in making the bill of lading in their names as consignees all was effected which the indorsement of a bill taken in the name of B. & S. would have accomplished. The cases cited by the respondent (*Meyerstein* v. *Barber*, L. R., 2 Com. Pl. 45; *Short* v. *Simpson*, 1 id. 255), show that a bill so indorsed has the same effect, even if the ship containing the goods was at sea, as delivery of the goods themselves. Here there was a delivery of the goods to Goldstein, and the bill of lading followed the possession.

, *Third.* The German law, as set out in evidence, has no application to the case in hand. It applies when the bill of lading is taken in the name of the vendee or of some person through whom the party claiming its benefit must make title. The observations already made show that in our opinion this is not the plaintiff's position. Nor are the defendants estopped from disputing the plaintiff's title. There is no finding of any fact upon which such doctrine can rest; no change of position by the plaintiff; a promise at most by the defendants without consideration, in violation of duty to their principals and in fraud of their rights. If it forms the foundation of any action, it cannot be one the effect of which is to deprive a third party of his property, or subject the defendant to a second action by the real owner of the goods. The right of stoppage, when it exists, depends upon equity, and that of the defendants, by virtue of their representative character, is superior in any view to the plaintiff's. If liable at all, it would be upon their assumpsit to keep the goods on his account. But what damages could the plaintiff show from the breach of an agreement to keep for him, or subject to his order, goods to which another person was entitled, and whose claim was as to him exclusive?

Some other grounds are urged by the respondent on which

he claims the judgment may be sustained. They have been examined, and are deemed untenable. The reasons for this. conclusion need not be stated, since however decided, they would be insufficient to overcome the appellants' objections. which have been already declared well taken.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

All concur, except FOLGER, Ch. J., absent from argument. Judgment reversed.