## PROVIDENCE COUNTY.

———◆———

DALTON & KIBBEE *vs.* JOHN D. THURSTON, Assignee.

✷  To make a purchase fraudulent there must be a fraudulent intent. That the purchaser has
 no reasonable expectation to pay, or is deeply insolvent, is not in itself enough.
Hence, when one had for years conducted his business with gross carelessness, without proper
 books, and ignorant of his liabilities, —
*Held,* that a purchase made by him not long before his voluntary assignment, and apparently
 in the usual course of his business, was not fraudulent.

REPLEVIN. Heard by the court, jury trial being waived.

*December* 2, 1886. DURFEE, C. J. This is replevin for lumber valued at $2,500. The writ was served August 6, 1884. The case is tried to the court on law and fact, jury trial being waived. The testimony shows that the defendant's assignor had carried on a lumber business in Wickford, R. I., for about nineteen years prior to July, 1884; that he had traded with the plaintiffs to some extent for about fifteen years; and that the lumber in suit was delivered to him by them early in June, 1884, on an order for it given by him at their solicitation the previous March. On July 17, 1884, he made a general assignment to the defendant

---

[1] Printed *ante,* p. 371, note.

for the benefit of his creditors. The immediate cause of his failure was his inability to meet the payment of two notes then falling due, in consequence of the refusal of a person with whom he had an arrangement for advances, from whom he had expected to borrow the money, to lend it. He testified, " I supposed I was all right, and that everything was going along smooth " until then. He also testified that he only kept a book of what he had sold, but not of what he bought or paid out, and that he did not know how much he owed until after the assignment. It appeared that in fact he owed, in addition to $10,000 secured by mortgage of a part of his stock of lumber, something over $20,000, and that to pay this amount he had book accounts which he considered worth a little more than $1,200, and his lumber, which consisted of the portion under mortgage, the cargo replevied by the plaintiffs, a cargo worth about $500, also replevied, and a small amount besides. He testified that he had had land to carry along, which he had got clear of by making sacrifices, and this had cramped him ; but that he first knew that he should have to make an assignment the day he made it. The plaintiffs claim the right to recover the lumber purchased of them on the ground that the purchase was fraudulent ; but they have introduced no evidence of any misrepresentation or concealment by the purchaser, or which materially contradicts his testimony. They rely upon his testimony showing that when he purchased of them he was deeply insolvent, to make out their case.

The mere fact that a purchaser is insolvent does not make his purchases invalid. Even the fact that he is deeply insolvent does not have that effect, unless he purchases with no intention or expectation of paying ; for if there be no dishonest mind or purpose, there is no fraud. In *Biggs* v. *Barry*, 2 Curt. 259, the fraud alleged was that the purchasers were deeply insolvent, and knew they were so when they made the purchases. On the trial the jury were left to say whether the purchasers had any " reasonable expectation " of paying ; but on motion for new trial the court held that this was error. " This is not a question," said Judge Curtis, " of reasonable expectation, but of fraudulent purpose. It is not a question whether the grounds of their belief that they could and should pay were sound and rational, but

whether they did so believe in point of fact." And so in *Commonwealth* v. *Eastman*, 1 Cush. 189, 221, the court held that the test of *reasonable* expectation was too sever The sanguine, hopeful mind, rashly confident or inconside .e, disbelieves in failure, and for that very reason sometimes ; ucks success out of desperate circumstances. The law lets the insolvent keep his own counsels and struggle with his embarrassments so long as he has an honest hope of overcoming them. In *Mitchell* v. *Worden*, 20 Barb. S. C. 253, the court held that the law does not make it the duty of the buyer to disclose to the seller his pecuniary circumstances, even though they are desperate and are known to him to be desperate, and even though there has been a long dealing between him and the seller in which credit has been given and punctually met, so long as the buyer continues to carry on his business. In *In re Shackleton*, L. R. 10 Ch. App. 446, it appeared that December 1 S. committed an act of bankruptcy; that December 3 a petition of adjudication was filed and served; and that December 5 he purchased wool at auction, and was allowed to take the wool without paying for it, the seller supposing him to be solvent. December 14 he was adjudicated a bankrupt, and December 21 the seller, who had first heard of the bankruptcy proceedings on December 19, gave notice that he rescinded the contract on the ground of fraud, and demanded to have the wool returned, but it was held that the trustee in bankruptcy was entitled to it. "It is true," say the court, "that a party must not make any misrepresentation, express or implied, and as at present advised, I think that Shackleton when he went for the goods must be taken to have made an implied representation that he intended to pay for them; and if it were thereby made out that at that time he did not intend to pay for them, I should consider that a case of fraudulent misrepresentation was shown. But I do not think this sufficiently made out." See, also, *Mulliken* v. *Miller*, 12 R. I. 296; Benjamin on Sales, § 440, note, and cases cited.

Of course, however, the fact that a purchaser is deeply insolvent when he purchases, and knows that he is so, is evidence from which, under some circumstances, it may be inferred that he had no intention or expectation of paying. The question in this case is, then, whether, under the circumstances disclosed, the inference

ought to be drawn. We think not. The purchaser, according to his own testimony, carried on his business in a very slipshod way, and was culpably ignorant of the true state of his affairs; but this shows only heedlessness or incapacity. For anything that appears, he had always carried on his business in the same way, and for years had not had the means of paying his debts in full. Nothing shows that the purchase from the plaintiffs was out of the usual course, or that it was made in anticipation of failure. On the contrary, the failure, according to the testimony, was precipitated unexpectedly, as it might have been precipitated long before, by the refusal of the person on whom he was relying for pecuniary accommodation to lend him any longer. We find nothing to show that the purchase was made for any other purpose than the purpose of continuing the business as usual. We must, therefore, render judgment for the defendant.

*Judgment for defendant for return and restoration and costs.*