## In re NEW YORK HOUSE FURNISHING GOODS CO.

(Circuit Court of Appeals, Second Circuit.    April 13, 1909.)

No. 216.

1. SALES (§ 296*)—STOPPAGE IN TRANSITU—RIGHT OF BUYER—TERMINATION.

The transitus of goods for the purpose of exercise of the right of stoppage in transitu is not ended until there has been an actual or constructive delivery of the goods to the consignee, for so long as the goods are in the carrier's custody, whether as carrier or warehouseman, at destination, the right of stoppage may be exercised.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 837; Dec. Dig. § 296.*]

2. SALES (§ 289*)—STOPPAGE IN TRANSITU—CHANGE OF RELATION.

A carrier cannot by his own will change his character so as to become the buyer's agent or warehouseman without the latter's assent, nor can the buyer change the capacity in which the carrier holds the goods, so as to make him the buyer's bailee, without the carrier's assent, to the prejudice of the seller's right of stoppage in transitu.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 824; Dec. Dig. § 289.*]

3. SALES (§ 296*)—STOPPAGE IN TRANSITU—EXERCISE OF RIGHT.

A bankrupt purchased certain refrigerators f. o. b. with instructions to ship by rail to New York. The goods were delivered to a carrier on February 13, 1908, who issued a bill of lading therefor. They arrived at destination, freight unpaid, on March 12th, and immediate notice was given to the consignee to remove them. A few days later they were levied on while still in the cars, after which a petition in bankruptcy was filed and a receiver appointed, and on March 25th the seller notified the carrier of its election to exercise its right of stoppage in transitu. *Held* that, the goods being still in the carrier's possession, the right of stoppage still existed, notwithstanding the levy.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 838; Dec. Dig. § 296.*]

Appeal from the District Court of the United States for the Southern District of New York.

This is an appeal by the receiver of the bankrupt from an order of the District Court, Southern District of New York, directing the receiver to pay to the Home Metallic Refrigerator Company the sum of $500 now in his hands as the proceeds of the sale of certain goods with costs and disbursements to be paid out of general funds of the bankrupt estate.

H. W. Newburger (George Edwin Joseph and Herbert H. Harris, of counsel), for appellant.

Fuller & Reuman, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.    The proceeds in question represent 100 refrigerators which the bankrupt had ordered from the Home Company two months and more before petition was filed; the price was agreed upon f. o. b. cars and instructions given to ship by rail to New York.    The goods were on February 13, 1908, delivered to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Chicago, Milwaukee & St. Paul Railway, which issued bill of lading giving the consignee's name and address "New York City, N. Y.," and guaranteeing that the freight should not exceed rates specified therein. The freight was not prepaid. They arrived at the Thirty-third Street freight station of the New York Central & Hudson River Railroad on March 12th. Notice was immediately given by the carrier to the consignee of their arrival, with a request to remove them. The consignee did not remove them, nor make any attempt so to do. A few days later a deputy sheriff, under an execution issued upon a judgment against the house furnishing goods company, called at the freight station and served a notice upon the person in charge that he had levied upon the refrigerators then standing in the cars. On March 18th petition in bankruptcy was filed and receiver appointed. On March 25th the Home Company notified the general freight agent of the New York Central & Hudson River Railroad Company to hold the refrigerators until arrangements could be made relative to their disposal. Arrangements were subsequently made between it and the receiver whereby the freight was paid and the goods removed and sold and the proceeds placed in the hands of the receiver subject to the order of the court.

The only question in the case is whether the right of stoppage in transitu continued in existence when the vendor reclaimed the goods. The general rule of law is well stated in Hutchinson on Carriers, §§ 415, 417:

"In the case of railroad companies transporting goods as common carriers, the transitus will not be considered as having come to an end, as soon as the goods have arrived at destination and have been stored, whether such carriers be required to give notice to the consignee or not, or whether their liability be held to cease as carriers upon the arrival and warehousing of the goods, without more, or not. As long as the goods are in their custody, whether as carriers or warehousemen, they must recognize the right of the vendor to stop delivery. * * * An actual or constructive delivery of the goods to the consignee will defeat the right. * * * It is not necessary that the goods should have come into the actual possession of the buyer, to put an end to the right of the vendor. * * * If the consignee, for his own convenience, agree with the carrier to let the goods remain in his warehouse, to be delivered when or as he should want them, or if that be the course of dealing between them, the carrier becomes the warehouseman or agent of the buyer, although he may still have a lien upon them for his freight. But the carrier cannot of his own will change his character so as to become the buyer's agent or warehouseman without the latter's assent; nor can the buyer change the capacity in which the carrier holds the goods, so as to make him a bailee for the buyer, without the carrier's assent. The intentions of both must concur."

Our attention is called to no facts in this case which evidence any such agreement or course of dealing or concurrence as would make the New York Central & Hudson River Railroad the warehouseman of the buyer touching these goods, which the latter did not demand or pay freight on prior to March 25, 1908. The levy or attempted levy by the sheriff in no way operated to defeat the vendor's right of reclamation. Covell v. Hitchcock, 23 Wend. (N. Y.) 612.

We find nothing in the authorities cited on appellant's brief in conflict with the statement above quoted. In Becker v. Hallgarten, 86 N. Y. 167, the goods had come into "the complete possession and control

· of the vendees." In Dixon v. Baldwin, 5 East, 175, they had passed out of the hands of carrier into the actual possession of the vendee's agent at Hull. The right of stoppage was sustained in Covell v. Hitchcock, 23 Wend. (N. Y.) 613, because the warehouseman to whom the goods were delivered was not the general agent of the purchaser. To the same effect is Harris v. Pratt, 17 N. Y. 249. In E. & G. Brooke Iron Co. v. O'Brien, 135 Mass. 442, the agent of the vendee had chartered two schooners, taken the goods from the shipping agent and loaded them on the vessels. In Wentworth v. Outhwaite, 10 Morg. & W. 436, they were actually in the "defendant's warehouse at Leeds, a large shed near the railway terminus, where it was the custom for the defendants to receive goods sent for the vendee." In Sawyer v. Joslin, 20 Vt. 172, 49 Am. Dec. 768, they had been landed upon a wharf, half a mile from the vendee's place of business, which wharf was the usual place of the vendee's receiving goods in that town. They were not subject to any lien for freight or charges, and, after they were landed at the wharf, neither the wharfinger, nor any person for him, or for the carrier, had any charge of the goods. In Biggs v. Barry, 2 Curtis (U. S.) 259, Fed. Cas. No. 1,402, they had been delivered to "forwarding agents, employed by the buyer, to remain with them until the buyer should send orders respecting their destination." This was held to be in legal effect a delivery to the buyer.

The facts in the case at bar will not sustain a holding that the transitus had terminated by March 25th.

The order is affirmed, with costs.