### In re CHARLES T. STORK & CO., Inc.

(District Court, S. D. New York. April 7, 1920.)

Sales ⬚⟹296—Property subject to stoppage in transitu until reaching final destination.

> Merchandise ordered by bankrupt for export to the Virgin Islands, and by its direction shipped by the seller to a forwarding carrier in New York, while in possession of such carrier awaiting further shipment, *held* subject to stoppage in transitu by the seller.

In Bankruptcy. In the Matter of Charles T. Stork & Co., Incorporated, bankrupt. On review of order of referee refusing reclamation of property by the American Horseshoe Company. Reversed.

Gilbert H. Montague and Joseph W. Goodwin, both of New York City, for claimant.

Robert P. Levis and Max E. Sanders, both of New York City, for trustee.

⬚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MAYER, District Judge. This is a reclamation proceeding, wherein the claimant claims the goods on the ground that it successfully exercised its right of stoppage in transitu. The referee has decided in favor of the trustee, upon the theory that the right of stoppage in transitu ceased at New York City at a time prior to the exercise of the right by claimant. The essential facts may be briefly set forth:

On August 14, 1919, Stork & Co. wrote the American Horseshoe Company for their lowest export price on 100 kegs of mule shoes. On August 16, 1919, the American Horseshoe Company answered, naming the price $5.75 per keg, f. o. b. New York City. New York City was referred to in this quotation as the basis for the export price; the American Horseshoe Company undertaking to prepay the freight to that point, regardless of the country to which the goods were to be exported. On August 21, 1919, Stork & Co. placed an order for the shoes. This order read in part as follows:

| Marks. | Ship to: | Virgin Islands. |
|---|---|---|
| W. S. 6622–F | | |
| Friederickstadt. | Destination: | See below. |

This was a clear statement that the destination was the Virgin Islands. On September 3, 1919 the American Horseshoe Company stated that the shipment was ready and asked for shipping instructions. On September 8, 1919, apparently in response to this inquiry, Stork & Co. instructed the Trans-Ocean Forwarding Company to take the shipment when it arrived at New York and forward it to the Virgin Islands on a bill of lading to the order of Stork & Co., but consigned to the West Indian Sugar Company.

On September 15, 1919, the Trans-Ocean Forwarding Company wrote the American Horseshoe Company that it was forwarding agent for Stork & Co. and requested that the shipment be forwarded to any downtown pier in New York, consigned to Charles T. Stork & Co., notifying Trans-Ocean Forwarding Company, and that the goods be marked "Friederickstadt." On September 25, 1919, the American Horseshoe Company shipped the goods by the Pennsylvania Railroad, marked as requested. As the Pennsylvania Railroad operated only to Pier 4 or 5 in New York, on the way to the Virgin Islands, Pier 4 or 5 was named in the bill of lading as the place where the Pennsylvania Railroad's undertaking should cease.

On September 25, 1919, apparently while the goods were on the way, the Trans-Ocean Forwarding Company wrote the American Horseshoe Company as follows:

"American Horseshoe Co., Phillipsburg, N. J.—Gentlemen: Referring to Chas. T. Stork & Co.'s order No. 6622–F, we beg to advise that we have not as yet received any advice as to whether this shipment has gone forward or not. This shipment, consisting of 100 kegs of mule shoes, has already missed one steamer, and we would like to know if it will miss another one. If we are to place this merchandise aboard a steamer as soon as it arrives in New York, we would like to know when we may expect it. Trusting you will give this matter your prompt attention, we remain,

"Yours very truly,      Trans-Ocean Forwarding Company, Inc.,
"Per Jack J. Morro.

"Copy to Chas. T. Stork & Co., Inc."

On the same or the following day the Trans-Ocean Forwarding Company, in accordance with the instructions received from Stork & Co. to forward to the Virgin Islands, received the shipment from the Pennsylvania Railroad, and, as the ship for the Virgin Islands had already sailed, placed the goods in their warehouse to await the next boat.

On October 16, 1919, the petition in bankruptcy against Stork & Co. was filed and the receivers appointed. On October 28, 1919, the American Horseshoe Company served upon the Trans-Ocean Forwarding Company a notice of stoppage in transitu.

In summary—the documentary evidence shows that the goods in question were bought for export; that their destination was the Virgin Islands; that the goods were shipped by the American Horseshoe Company to New York, consigned to Stork & Co.; that, prior to their shipment by the American Horseshoe Company, Stork & Co. had instructed the Trans-Ocean Forwarding Company to take possession of the goods at New York solely for the purpose of forwarding them to the Virgin Islands; that while the goods were in the possession of the Trans-Ocean Forwarding Company, awaiting a ship for the Virgin Islands, the notice of stoppage in transitu was served. The undisputed testimony also shows that the sole purpose of the Trans-Ocean Company's employment was to expedite the goods to the Virgin Islands, and no authority to receive for any other purpose was shown. It is entirely clear, also, that Trans-Ocean Forwarding Company was merely the forwarding agent for Stork & Co., and was not Stork & Co.'s agent for any other purpose and in any other capacity, in point of fact or law.

The rule is well settled that, while the goods remain in the possession of persons concerned in their transportation to the place of destination named by the purchaser, they may, in the event of the purchaser's insolvency, be reclaimed by the seller, regardless of who has possession of the goods for the purpose of transportation. Section 138 of the New York Personal Property Law (Consol. Laws, c. 41) is merely declaratory of the common law. The leading case of Harris v. Pratt, 17 N. Y. 249, makes clear that the essential test is destination. The inquiry is always whether the goods reached the destination agreed upon between the parties before the vendor exercised or attempted to exercise his right of stoppage in transitu.

There is nothing in Becker v. Hallgarten, 86 N. Y. 167, to the contrary. Judge Danforth, in the course of his opinion in the Becker Case, supra, said:

"It has been held that the delivery to the vendee, which puts an end to the state of passage, may be at a place where he means the goods to remain until a fresh destination is communicated to them by orders from himself."

A destination may be originally agreed upon, and subsequently changed by selecting some point nearer to the place of shipment. This is but another way of saying that in such a case a new destination is determined upon, and, of course, the transit in such instance would end at the newly named destination. But by new destination is not meant a mere place of temporary detention en route. In the case at bar,

if the original common carrier had a line which ran to the Virgin Islands, there would, of course, have been no question. What happened was that the destination of the Virgin Islands was never changed, and that the detention of the goods in New York was merely due to waiting for a steamer, or, in other words, to transportation requirements, and in that connection, as heretofore stated, the Trans-Ocean Forwarding Company acted merely as forwarding agent. The fact that the name of the vendee or consignee of the goods, as the case might be, at Friederickstadt, Virgin Islands, was not known to the vendor, is immaterial, remembering always that destination is the test.

Upon all the facts it seems clear that the destination of the Virgin Islands was never changed, and, such being the case, the right of stoppage in transitu was exercised in time.

The report of the referee is reversed, and an order may be submitted on notice, requiring the trustee to deliver the goods in question to the claimant.