## In re CHARLES T. STORK & CO.

### Appeal of LEIDESDORF et al.

#### (Circuit Court of Appeals, Second Circuit.    February 16, 1921.)

#### No. 155.

Sales ⬥296—Delivery to agent of buyer terminates right of stoppage in
transitu.
>        Bankrupt, which was engaged in the exportation of merchandise, con-
>    tracted with petitioner for the purchase of mule shoes, to be delivered
>    f. o. b. New York, packed for export shipment.    The goods were shipped,
>    freight paid by petitioner, and were received by a forwarding company
>    under instructions from bankrupt to forward them to order to a com-
>    pany at a port in Virgin Islands, and were in possession of the forwarding
>    company at the time of bankruptcy.    Held, that such company received
>    them as agent for bankrupt, and that on such receipt delivery was com-
>    plete, and the right of stoppage in transitu by petitioner terminated.

Appeal from the District Court of the United States for the Southern
District of New York.

In the matter of Charles T. Stork & Co., Incorporated, bankrupt.
On appeal by Samuel D. Leidesdorf and Raymond H. Sarfaty, re-
ceivers, from an order of the District Court.    Reversed.

For opinion below, see 265 Fed. 864.

Prior to October, 1919, the bankrupt corporation transacted business in New
York City (inter alia) by buying for resale abroad many articles of merchan-
dise.    In August of that year the bankrupt requested the American Horseshoe
Company, of Phillipsburg, N. J., to "quote their lowest export price" on a cer-
tain quantity of mule shoes.    This the American Company did by naming so

much per keg. "f. o. b. New York City `*` `*` `*` terms 60 days, two per cent.— 10," which is taken to mean 2 per cent. off for payment in 10 days, bill as rendered due in 60 days.

On August 21st the bankrupt accepted this offer and instructed the American Company to "mark all cases and packages" with certain marks and numbers, stated that the destination of the shoes was the Virgin Islands,· repeated the understanding that the price was "f. o. b. New York City securely packed for export shipment," and requested that, "when goods are ready for shipment, kindly advise [us], sending three copies pro forma invoices, packing lists, if possible, and shipping instructions will be sent." On September 3d the American Company advised the bankrupt that they were ready to ship and awaited instructions.

The Trans-Ocean Forwarding Company was and is a concern of New York City in the business of forwarding goods from the interior and from New York to foreign destinations. It maintained no line of steamers, issued no bills· of lading, and merely shipped as directed by its own customers. The bankrupt instructed the Trans-Ocean Company to receive these mule shoes and to ship them to "order,"—i. e., the order of bankrupt; but the "West Indian Sugar Company, St. Croix, Virgin Is.," was named as the person for whom the shoes were intended. A fortnight later the Trans-Ocean Company wrote direct to the American Horseshoe Company, stating that Stork's order had not yet been filled, and on (apparently) the same day the American Company did ship the shoes in question by straight uniform bill of lading and by rail to "Charles T. Stork & Co., Inc., 144 Nassau Street, New York, N. Y." The rail freight was prepaid by the American Company and the goods were marked as per original instructions, but not with the purchaser's name and address, which was evidently to be supplied by the Trans-Ocean Company, and was supplied as above noted. It is certain that the only customer known to the American Company, and the party to whom they sold the mule shoes, was the bankrupt, and fairly inferable that the bankrupt had sold or was expecting to sell the same shoes to the West Indian Sugar Company. The Trans-Ocean Company was the forwarding agent for the bankrupt, the bankrupt controlled the Trans-Ocean Company by stock ownership and furnished to it about 80 per cent. of its business.

The shoes arrived in New York and lay subject to the order of the bankrupt in the warehouse of the Trans-Ocean Company until insolvency supervened and receivers in bankruptcy were appointed for Stork & Co.; this· occurred on October 16th, and on October 28th the American Company served a notice of stoppage in transitu upon Trans-Ocean Company and filed a petition in the District Court (which had appointed the receivers), praying for the delivery of the merchandise to it. Such delivery was awarded by the order complained of, and the receivers took this appeal.

Robert P. Levis, of New York City, for appellants.

Gilbert H. Montague and Joseph W. Goodwin, both of New York City, for appellee American Co.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). While the Personal Property Law of New York (Consol. Laws, c. 41) doubtless regulates the rights of parties in respect of stoppage in transit, no special reference to that statute is necessary, because it was thought in argument and seems to us to be but declaratory of settled existing law. The right of stoppage exists only while the goods are in transit; i. e. until they have come into the actual or constructive possession of the buyer or of someone lawfully claiming under him. Conyers v. Ennis, 2 Mason, 236, Fed. Cas. No. 3,149. As pointed out by us in Re New York, etc., Co., 169 Fed. 612, 95 C. C. A. 140, the right con-

tinues only while the goods are in the carrier's custody, though that custody may be of a warehouseman; and the carriage may be continuing, though the carrier be but a local delivery concern. In re Burke [D. C.] 140 Fed. 971.

But if the goods have come into the constructive possession of the buyer by delivery to his agent, the transit is ended and the right of stoppage has expired. Mottram v. Heyer, 5 Denio [N. Y.] 629. Indeed, if the consignee, having power to sell the goods, has disposed of them before arrival to a third person unacquainted with any circumstances to taint the fairness of the transaction, the right of stoppage is ended. Per Livingston, J., Spring v. South Carolina, etc., Co., 8 Wheat. 287, 5 L. Ed. 614. We may note that the decisions largely discussed at bar are all considered in our opinion in Re New York, etc., Co., supra. Of the meaning of the letters "f. o. b." we may take judicial notice, for "their meaning in contracts of this sort is plain and well understood. They import that the purchaser shall be free from all expense which may have attended the shipment and transportation to the point named." Sheffield Furnace Co. v. Hull, etc., Co., 101 Ala. 446, 481, 14 South. 672, 681.

Applying these principles to the uncontradicted evidence herein, we hold that the agreement between the American Company and the bankrupt was that the former was to sell to the latter on 60 days' credit certain merchandise; that the f. o. b. portion of the contract was fulfilled by the American Company's payment of the freight from Phillipsburg to New York, followed by delivery at the latter city. The transit of the goods as between buyer and seller was accomplished when the goods arrived and were delivered in New York. By what machinery a consignment to Stork & Co. came into the possession of the Trans-Ocean Company does not appear, but it could only have been by the act of Stork, and when the Trans-Ocean Company received the goods they received them as the agent of Stork, and not otherwise.

That the bankrupt bought these goods for resale abroad was material upon one point only, for it may be assumed (it is not proven) that the American Company offered the goods at a lower price for export than they would have charged for domestic consumption. But the price was fixed, the agreement was not for a sale and delivery abroad by the American Company, but for a sale to Stork & Co. in New York. It follows that the only transit of the goods material to the present case was that from the seller to the buyer, that buyer became a bankrupt, but that transit had been accomplished at least three weeks before petition filed, at which time the goods were and long had been in the possession, not of a carrier, but of a warehousing agent of Stork & Co.

Therefore no right of stoppage existed, and the order complained of is reversed, with costs.