## THE MACON AND WESTERN RAILROAD *vs.* MEADOR BROTHERS.

1. On November 12th a railroad received certain boxes of tobacco to be carried from Atlanta to Macon; they reached the latter place on November 15th, and under an agreement between the consignee and the carrier, they were set aside by the latter in its depot to be sold and the proceeds used to pay past due freights, it being agreed that the balance, if any, should go to the consignee. He did not receive the boxes and then turn them over, nor did he assign the bill of lading, nor was the freight paid. On December 12th the consignors sought to stop the boxes *in transitu* and failing to obtain them on demand, sought to recover against the carrier:

   *Held*, that no actual delivery had taken place so as to prevent a stoppage *in transitu*.

2. Can a carrier purchase the title of a vendee and set it up against the vendor's right of stoppage *in transitu? Quære*.

Carriers. Railroads. Vendor and purchaser. Stoppage *in transitu*. Before Judge SPEER. Bibb Superior Court. October Term, 1879.

Reported in the decision.

LANIER & ANDERSON, for plaintiff in error.

BLOUNT & HARDEMAN ; HILL & HARRIS, for defendant.

JACKSON, Chief Justice.

Meador Brothers shipped from Atlanta to Macon certain boxes of tobacco consigned to Carlos. The Macon and Western Railroad Company received them as carriers, about the twelfth day of November, 1872, and they arrived in Macon about the fifteenth, and shortly thereafter

the treasurer of the company, Brantley, under an agreement and order from Carlos, as he testifies, set the goods or tobacco aside in the depot to be sold by the company to pay past freights, and balance to Carlos, if any. After this transaction, Meador Brothers instituted proceedings to stop the goods *in transitu,* Carlos having been forced into bankruptcy, and the question is whether on the twelfth of December this tobacco had been so delivered into the possession of Carlos, as to defeat the right of the vendors to stop their transit to him, and to vest in the carrier a right to exact his indebtedness for freight on other goods out of these goods before the vendors could be paid ?

Our Code declares that the right of stoppage *in transitu* continues until the vendee obtained *actual possession* of the goods.   In the ordinary signification of those words, there is no evidence in this record that the consignee ever did obtain the possession.   He did not go with Brantley and have these boxes set apart, but gave orders in respect to goods consigned to him generally, and perhaps an order designating these boxes, though that appears uncertain, looking at all the testimony in the record.   They were set apart only by being moved from one part of the carriers' warehouse to another, according to Brantley's testimony, without the possession having been actually at all in Carlos.   This possession was only constructive.   The boxes were only moved from one part to another part of the same apartment where the company had deposited them for the consignee, and where its freights were commonly stored until delivered to the consignees.   The bill of lading had not been delivered up or transferred, nor had the freight on these boxes been paid.   Under these circumstances we cannot see actual possession in Carlos, or actual delivery to him, or to anybody for him.   Brantley was acting for the road, and was its agent.

Besides, it is very questionable whether the carrier can buy the vendee's title as against the vendor's right of

stoppage *in transitu* from the vendee, and set it up so as to defeat that right under our Code. Section 2076 enacts that he cannot dispute the title of the person delivering the goods to him, by setting up adverse title in himself, or a title in third persons, which is not being enforced against him. See also Hilliard on Sales, 301.

However that may be, we think that our Code contemplates actual delivery and possession, as distinguished from constructive possession, and there was no actual delivery or possession here.

Indeed, at common law such a delivery as this is would hardly avail to defeat the vendor's right to stop the goods *in transitu.* Hilliard on Sales, 301. 3 Bos. & Pul., 49.

The tobacco was sold on credit. Carlos was put in bankruptcy, and therefore was not able to pay for the tobacco, and was insolvent in the meaning of §2643 of the Code, which declares that where credit is given and the insolvency of the purchaser is made known to the seller, he may still exercise the right to stop the goods before they reach the consignee. See also Code, §2650.

We think that the verdict of the jury for the plaintiffs is right under the law and evidence on the case made, and that the court did not err in overruling the motion for a new trial.

Judgment affirmed.