W. T. HARRIS ET AL. v. WALTER H. TENNEY & Co.

No. 7532.

1. **Stoppage in Transitu.**—The seller of chattels has a lien upon them and the right to hold them for the purchase price so long as they are in his possession; and when they have been shipped for delivery to the debtor who has become insolvent, the right to stop them on the way, to recover possession, and subject them to the payment of such unpaid price. This right continues not only while the goods are in actual transit, but until they have reached their destination and are delivered into the actual or constructive possession of the consignee.

2. **In Transitu.**—Goods shipped to failing merchants reached Waco, their place of business. After the consignees had been closed out by attachment an attempt was made to seize said goods by levy of attachment at the depot, and while on drays on the way from the depot to the store house, then in the hands of the sheriff under other attachments. *Held*, that the goods had not reached the end of their transit, and the seizure by the sheriff did not deprive the sellers of their right of stoppage. The goods while in the railway depot and on the drays were still in course of transportation.

3. **Inconsistent Attempt at Agency.** — Merchants became insolvent, and their goods were seized and place of business closed under attachment by the sheriff. A bank sued out an attachment, and the cashier of the bank ascertained that goods shipped to the insolvent debtors were in the railway depot. Desiring to subject these goods to the attachment issued in favor of the bank, said cashier obtained an order from one of the bankrupt firm for the goods. The bank loaned the firm money to pay freight. With such order the goods were surrendered by the railway, and were loaded on drays and shipped to the closed business house of the consignees. *Held*, that the acts of the bank cashier were not as of an agent of the bankrupt debtors; his relations with the bank and his acts in the matter made manifest his agency for the bank. His receiving the goods was not the act of the consignees, nor was the delivery to the sheriff such delivery.

4. **Practice.** — The sellers were not bound to intervene in the attachment suits in order to maintain their right of stoppage in transitu when the goods were seized under attachment when on the route.

5. **Stoppage, etc.**—The creditor's right to stop the goods is to recover the possession and hold them subject to the seller's lien, and if the goods have been converted by one in violation of this right, he would be liable for the value of the same. In such suit the debtor is not a necessary party.

APPEAL from McLennan. Tried below before Hon. J. R. DICKINSON.

*Clark, Dyer & Bolinger*, for appellants.—The facts in evidence in this cause show that the goods shipped by the plaintiffs to Moser & Son, at Waco, Texas, had reached their ultimate and final destination, and that the freight had been paid by Moser & Son, the vendees and consignees of said goods, to the common carrier, and said goods received into the actual and constructive possession of said vendees, so as to terminate fully the transitus of said goods and defeat the right of stoppage in transitu thereof

by plaintiffs; and the attachment of the Waco State Bank having been made upon said goods in its suit against Moser & Son, as shown by the evidence, gave said bank a prior right to said goods, and defeated plaintiffs' right thereto as shippers and sellers of said goods, and deprived plaintiffs of any right of action against said bank and the sheriff making levy of said writ; and the court erred in holding otherwise. Chandler v. Fulton, 10 Texas, 2; Halff, Weiss & Co. v. Allyn & Co., 60 Texas, 278; Langstaff v. Stix, 1 So. Rep., 97; Hall v. Dimond, 3 At. Rep., 423; Sawyer v. Joslin, 49 Am. Dec., 769; 2 Willson's C. C., sec. 787.

*Robertson & Davis*, for appellees.—If the goods sold Moser & Son by appellees were in the hands of the carrier after Moser & Son became notoriously insolvent and after their stock of goods was attached, and said stock and the store house containing the same were in the sole possession and control of the sheriff, then if one of the firm of Moser & Son colludes with a creditor of Moser & Son to raise the money to pay the freight on said goods, and said creditor, as agent for Moser & Son, takes a deputy sheriff with him to the depot of the carrier and pays the freight on said goods, and has the deputy sheriff to carry said goods to the store house recently occupied by Moser & Son, but then in possession and control of the sheriff under attachment, an attachment which had been sued out in favor of the party colluding with one of the firm of Moser & Son and levied on said goods on their way to said store house from said depot, and levied again after reaching said store house, would not deprive the party who sold said goods of his right to recover the goods so levied upon, under the rules of law governing stoppage in transitu. Hutch. on Carr., sec. 409, et seq.; Halff, Weiss & Co. v. Allyn & Co., 60 Texas, 278; Allyn & Co. v. Willis & Bro., 65 Texas, 66; Stuart & Sutherland v. Mann & Co., 2 Willson's C. C., 784; Calahan v. Babcock, 8 Am. Rep., 63; Rucker v. Donovan, 19 Am. Rep., 84; Loeb v. Peters, 35 Am. Rep., 17.

COLLARD, JUDGE, *Section A.*—This suit was brought June 27, 1889, by the appellees Walter H. Tenney & Co., a firm of merchants in Boston, Massachusetts, against W. T. Harris, sheriff of McLennan County, and the Waco State Bank, to establish their right to the possession of certain goods, or the value thereof, which had been seized by the sheriff at the instance of the bank, and sold and converted to the use of the bank. The cause of action of plaintiffs is predicated upon their alleged seller's lien upon the goods, or right of stoppage in transitu. The value of the goods itemized in the account was $563.67, but plaintiffs sustained their right of recovery to only the last two items of the account, amounting to $353.17, and it is only of these that we are concerned, and will only speak of them. Defendants have appealed.

Plaintiffs sold the goods to the firm of Moser & Son, merchants in Waco,

on a credit, and shipped them by rail to Waco, the point of destination, for Moser & Son.   They arrived in Waco by the Missouri, Kansas & Texas Railway, and were left in the depot.   On the 3d day of October, 1888, Moser & Son were closed out by attachment, their business house, and all their goods therein, levied on by the sheriff and taken into his possession. Moser & Son were then insolvent.   On the 4th of October, 1888, the Waco State Bank sued out attachment against Moser & Son on a debt of $6990.88, and caused the sheriff to levy the same on the goods sold by plaintiffs to Moser & Son—the goods involved in this suit.

The levy was made under the following circumstances:   W. W. Seley, cashier of the bank, obtained from one of the firm of Moser & Son, October 4, 1888, a written order to the railway agent, directing the company to deliver the goods to the dray line in Waco, to be carried by the dray line to the store of Moser & Son, Moser giving Seley money to pay the freight (loaned by the bank, and afterward repaid by Moser & Son), requesting witness to present the order, pay the freight, receive possession of the goods, and have the dray line take the goods to the store of Moser & Son.   Seley took Cook, a deputy sheriff, along with him to the depot, went to the depot, presented the order, paid the freight, and received possession of the goods from the railway company, "or rather," Seley says, "after paying said freight and presenting the order, the railway company authorized him or the dray line to take possession of said goods; and Cook, after paying said freight and presenting said order of Moser & Son, was requested by witness to see said goods loaded on the dray line for shipment up town to the store of Moser & Son, which Cook agreed to do."   (Sheriff Harris had prior to this been to the depot and directed or informed the agent that he must not deliver the goods to Moser & Son, but to hold them.)   Seley returned and directed the sheriff to go and levy on the goods for the bank.

Cook testified, that he saw the goods loaded on the drays or floats, and was going along with them to the store, when Harris, while the goods were on their way to the store, before reaching it, levied the attachment on the goods; and again, after the goods reached the store, under direction of counsel for the bank, levied on the goods a second time.   Cook was not acting officially; did not have the writ and did not levy it.

Harris, testifying, says he is not certain when the goods were first levied on by him, his impression being that he made the levy when the goods were at the depot; but he is certain that he levied the writ after the arrival of the goods at the store house.

Seley testified, that he acted as the agent of Moser & Son in receiving the goods.   The bank advanced the money to Moser & Son to pay the freight on the goods, and Moser & Son repaid them.   Seley also testified, that when Moser gave him the order for the goods, Moser requested him

to present the order to the agent of the railway, pay the freight, and receive the possession of the goods, and have the dray line take them to the store of Moser & Son.

The testimony does not show how long the goods had been at the depot before they were taken away. Harris says he learned that there were goods at the depot belonging to Moser & Son. He went to the depot to inquire if there were any goods there belonging to them, and learned the fact, and he then "informed the agent of the railway company that he must not deliver them to Moser & Son, and to hold them."

Moser, testifying, says, that learning that the goods were at the depot, on October 4 he gave Seley an order for the same, requesting the company or its agent to deliver the goods to the dray line for Moser & Son. He also says, that a day or so after the levy, and while the goods were in his possession under the levy, counsel for plaintiffs claimed possession thereof, saying, "that they had a right to them; that they had not reached their destination of shipment and had not been delivered into the possession of said Moser & Son." Harris refused to deliver the possession of the goods, but sold them and applied the proceeds to the debt of the bank.

It was proved by W. S. Baker, Esq., who was representing other creditors of Moser & Son, that he and the agent of the parties he was representing saw the goods in the store within a day or so after the levy, and seeing that they were the goods of plaintiffs, he notified the sheriff of the claim of plaintiffs, stating the claim of right to stop the goods in transit, and told the sheriff he would be held responsible for them. After he had so notified the sheriff, plaintiffs employed attorneys other than witness, and they notified the sheriff, claimed the goods on the legal right of plaintiffs to stop them in transit, and warned the sheriff that if he did not surrender the goods they would sue him for their value.

The second levy was made without releasing the first, but the court finds that the last levy is the basis of the sheriff's return. The court also finds, that "the bank and its cashier knew, as did Moser & Son, while the above transactions were had, that Moser & Son were insolvent, and that they, bank and Moser & Son, endeavored to so manipulate the goods that they would not be subject to the right of stoppage in transitu should it be attempted."

The court also finds, that the goods at the depot were subject to the right of stoppage *when the sheriff levied on them*, and that "the delivery order given by Moser & Son did not change the destination of the goods, which was at the place of business on Austin street; and the payment of freight, and the acceptance of the order by the railway company did not end the transitus, or give the purchaser such possession of the goods as would defeat the right of plaintiffs.

The court also held, that the attempt by the debtor and the bank to

defeat the right of plaintiffs to take the goods in transit was a nullity, and did not have that effect.

Also, that the goods never reached the possession of Moser & Son; the sheriff was not their agent, but was acting in hostility to them; and the goods having been claimed while in his hands, he held them subject to plaintiffs' right of stoppage.

Appellants contend, by their first assignment of error, that the evidence shows that at the time the attachment was levied the goods had reached their final destination, and were in the actual and constructive possession of Moser & Son, and were therefore no longer subject to stoppage in transitu by appellees.

The seller of chattels has a lien upon them, and the right to hold them for the purchase price, so long as they are in his possession; and when they have been shipped for delivery to the debtor who has become insolvent, the right to stop them on the way, to recover possession, and subject them to the payment of such unpaid price. This right continues not only while the goods are in actual transit, but until they have reached their destination and are delivered into the actual or constructive possession of the consignee. Halff, Weiss & Co. v. Allyn & Co., 60 Texas, 279; Chandler v. Fulton, 10 Texas, 13; Jones on Liens, 800, et seq., 857, 862, et seq., and specially 902.

Appellants do not controvert the foregoing proposition, but they say, that in this case it is shown that the goods had reached their ultimate destination and had been duly delivered by the carrier into the possession of their agent before the levy of the writ.

We have seen what kind of delivery it was. The order from Moser & Son to the agent of the railway did not authorize the agent to deliver the goods to Seley, but to the dray line. It is true he had instructions from Moser to receive possession, but he does not say he did, but rather the company authorized him or the float line to take possession. He did not then take possession, but requested Cook to see the goods loaded on the dray for shipment up town to the store house of Moser & Son. The railway company was evidently only delivering the goods to the dray line for shipment, as directed in the order. The goods were loaded on the drays or floats, and Cook went with them to the store. If the goods were levied on at the depot, as Harris is impressed to say, or while on their way to the store, as Cook testifies, we think they were still in transit. Halff, Weiss & Co. v. Allyn & Co., 60 Texas, 282. The attachment by creditors while in transit did not impair or defeat plaintiffs' right. Allyn & Co. v. Willis Bros., 65 Texas, 66; Jones on Liens, 965, and authorites cited in note 3.

In White v. Mitchell, 38 Michigan, 390, action of trover was sustained against the sheriff, who had attached goods in the hands of the local carrier before delivery to the purchaser. In another case, a local carrier

or transfer agent, who had general authority from the consignee to deliver all goods shipped to him, undertook to transfer goods (shipped by rail) from the depot to the consignee, but finding the store closed, placed the goods in a warehouse in the city, where they were levied on by attaching creditors; it was held, that there had been no actual or constructive delivery to consignee, and the seller's right of stoppage in transit was not lost when the attachment was levied. Mason v. Wilson, 43 Ark., 172.

In Ohio it was decided, that the right of stoppage in transitu is terminated only when possession was *voluntarily* and actually transferred to the vendee or to his agent; and that the seizure while in transitu subjects the officer making it to suit for the value of the goods by the vendor. Calahan v. Babcock, 21 Ohio St., 292–294. Where goods arrived at the depot, place of shipment, '' and by agreement between the consignee and the carrier they were set aside by the latter in its depot, to be sold and the proceeds used to pay past due freights'' (the consignee did not receive the boxes and then turn them over, assign the bill of lading, or pay the freight), it was held, that there was no delivery so as to interfere with the right of stoppage in transitu. Railway v. Meador Bros., 65 Ga., 705.

Upon the arrival of goods, the car containing them was set out where, according to custom, they were to be taken out immediately by the consignees, or on failure, to pay $2 a day demurrage, there being no agreement that the carrier was to hold the goods as warehouseman or agent. On the next day they were attached, and it was held that the consignor's right of stoppage in transitu had not terminated, and that the officer attaching was liable in an action of trover. Inslee v. Lane, 57 N. H., 454.

The delivery to the consignee or his agent must be complete. Railway v. Painter & Sons, 15 Neb., 395. A delivery to a carrier by order of the consignee is not such a constructive delivery to the consignee as will interfere with the consignor's right of stoppage in transitu. Jones on Liens, 907–912.

We are of opinion that plaintiffs' right of stoppage in transitu was not at an end while the goods were at the depot or on the drays. They were still in course of transportation, and had not been delivered to the consignees in person, or to their agent. There is no testimony in the case that can be construed to make the railway company or the dray line agents of the consignees, nor does the evidence show that Seley ever received the goods into his possession, even if under the circumstances he was the agent of Moser & Son to receive possession for them. Had Moser & Son themselves intercepted the goods at the depot before the terminus of transit, and, without actually taking the goods into their possession, ordered their delivery to the local carrier for shipment to their store, the right of plaintiff would not have been interfered with while in the hands of such carrier.

But there is a question deeper than this, which will relieve the case of difficulty in relation to delivery or not to Seley. Was he the agent of Moser & Son, or rather, could he be under the circumstances? We think he was the agent of the bank during the entire transaction. He was acting for the bank and for its benefit; he was its representative. We do not think the attaching creditor would be allowed to become the agent of the debtor, under the circumstances shown in this case, to deprive the seller of his lien, and to secure a superior and valuable right to himself. The principle involved is more than one of mere diligence to secure a debt. The means adopted, if successful, would work a palpable injustice to plaintiffs, which should not be perfected and affirmed by the courts. On the contrary, the courts should prevent the consummation of such a design. The bank could not, as was attempted in this case, by acting for itself and its debtor, extinguish or destroy the right of another that stood in the way of collecting its debt.

The conclusion arrived at by the court below, in our judgment, was correct, and should not be disturbed on this question. The law supposes, that if the vendor loses his lien, or right of stoppage in transitu, it shall be by the usual course of events, or such as fall out without the combining, the connivance, and co-operation of the vendee and an attaching creditor.

The delivery of the goods at the store house formerly occupied by Moser & Son, but at the time in the possession of the sheriff by virtue of seizure under attachment, was no delivery, actual or constructive, to Moser & Son. They had no control over the house, and a second levy there put the bank in no better attitude than it was before. The first levy was not released, and the goods had not left the possession of the sheriff from the time of the first levy, whether made at the depot or en route on the drays. Moser & Son had never had possession of the goods in person or by agent, and plaintiffs' right was still in force.

While the goods were so in the possession of the sheriff, he was notified in a reasonable time by plaintiffs' attorney of their right and its nature (but it is quite evident to us that the sheriff, the bank, and Moser & Son knew of such right all the while), before any change had taken place in the relations of any of the parties to the goods, and that such right would be insisted on. He refused to recognize plaintiffs' right, and thereby became liable, with the bank, for the value of the goods.

Plaintiffs were not required to intervene in the attachment suit of the bank against Moser & Son in order to establish their right of regaining possession of the goods or recovering their value. They might have done so, as was done in cases cited (Halff, Weiss & Co. v. Allyn & Co., and Allyn & Co. v. Willis Bros., supra), but they were not compelled to intervene, or to file bond and oath to try the right of property. Lang v. Dougherty, 74 Texas, 228.

We do not think Moser & Son were necessary parties defendant. Plaintiffs did not sue to recover their debt and foreclose their sellers' lien upon the goods, but to recover the value of the goods from a wrongdoer, who had converted them. Moser & Son had no interest in this contest. The right of stoppage in transitu is to recover the possession of the goods, and hold the same subject to the seller's lien; and if the goods have been converted by one in violation of this right, he would be liable for the value of the same; such value to be held upon recovery by the vendor, instead of and under the same right as the goods themselves.

The seller's right is not to rescind the sale, and rescission does not result from the enforcement of such right; its object is " to secure possession to the vendor to enable him to exercise his right as an unpaid vendor." Allyn & Co. v. Willis Bros., supra. After possession has been reclaimed, the seller holds the goods subject to his lien, and must ordinarily hold them to the expiration of the credit given, so as to deliver them to the purchaser upon payment of the purchase price. Jones on Liens, 862. If the time of credit expires without payment, he can then proceed to enforce his lien. Jones on Liens, 862–864. This being the character of the right and its object, there can be no necessity to make the debtor a party. If the suit is not only to recover possession, but to obtain judgment on the debt and foreclose the lien, the debtor would be a necessary party. This suit asks no such relief; it was brought purely upon the right of stoppage in transitu, the vender being insolvent. Where the suit was against the carrier who, after notice, delivered the goods, the debtor, being joined as defendant, was dismissed because of insolvency, and judgment was rendered against the carrier, but there is no comment in the opinion on the fact. Poole v. Railway, 58 Texas, 135. We are in no doubt of the correctness of the conclusion that Moser & Son were not necessary parties to this suit.

The foregoing discussion disposes of all the assignments of error adversely to appellant. The judgment of the lower court should be affirmed.

*Affirmed.*

Adopted June 14, 1892.