HENRY O'NEAL *et al.*, Respondents, v. JOHN C. DAY, Sheriff of Greene County, Appellant.

St. Louis Court of Appeals, February 14, 1893.

1. **Stoppage in Transitu**: TERMINATION OF TRANSIT. When a common carrier, employed to transport goods from the vendor to the vendee, is to deliver them to the latter at its depot at the point of destination, a delivery of them by it at such depot to a local carrier, who is the agent of the vendee, and as such has a general authority to receive and receipt for goods arriving there for him, is *prima facie* a termination of the transit of the goods so as to put an end to the vendor's right of stoppage *in transitu*.

2. ———: ———: BURDEN OF PROOF. If such general authority does not extend to a particular case, the burden is upon the vendor to show it. This he may do by showing that the vendee has refused to receive the goods because of his insolvency, or because they were improperly billed. But a temporary refusal by the vendee to receive them on account of inconvenience in placing them in his store, owing to a recent fire, will not suffice for this purpose.

*Appeal from the Greene Circuit Court.*—HON. J. T. NEVELL, Special Judge.

REVERSED AND REMANDED.

*Jas. W. Silsby* and *C. V. Buckley*, for appellant.

When goods are consigned and shipped by the vendor to the vendee, his right of stoppage *in transitu* ceases when they have passed into the actual or constructive possession of the buyer or his agent. 5 Wait's

Actions & Defenses, pp. 615, 621; 1 Jones on Liens, sec. 938; *Stevens v. Wheeler*, 27 Barb. 658; *Millard v. Webster*, 8 Atl. Rep. 470. There is no evidence in this case that M. M. Johnson was a forwarding agent or a carrier. He was not the agent of the railroad company, had no connection with it, but received the goods at the depot for the consignee; he represented the consignee alone, so that, when he receipted for the goods and took them away, the railroad company's relation as carrier had absolutely ceased. *Hoover v. Tibbutts*, 13 Wis. 79; *Callahan v. Babcock*, 21 Ohio St. 281; 1 Jones on Liens, secs. 921, 922. Whenever the consignee by itself or agent receipts for the goods, they thereby pass into the possession of the consignee, and the carrier loses all control over them as carrier, and they are thereafter subject to the absolute dominion of the consignee, and the right of stoppage *in transitu* is gone. So that in this case if M. M. Johnson receipted for the goods, and of this there is no question and no conflict in the evidence, the plaintiff's right to reclaim the goods is gone. 1 Jones on Liens, secs. 934, 940; *Langstaff v. Stix*, 1 S. Rep. 97. If the goods have arrived at their place of ultimate destination, and have come into the real or constructive possession of the purchaser, or of some agent authorized to act in respect to the disposition of them otherwise than by merely forwarding them to the vendor, then the transit is at an end. *Cabeen v. Campbell*, 30 Pa. St. 254; *Mohr v. Railroad*, 106 Mass. 67; *Blackman v. Pierce*, 23 Cal. 508; *Chandler v. Fulton*, 10 Tex. 2.

*Jas. R. Vaughan* and *Chas. A. Cox*, for respondents.

In Missouri the right of stoppage is not precluded until the goods have actually reached the buyer, or

under circumstances equivalent thereto. *Estey & Camp v. Truxell*, 25 Mo. App. 244; *Heinz v. Trans. Co.*, 82 Mo. 236; *Conrad v. Fisher*, 37 Mo. App. 352. A delivery to a local carrier, freight or dray line, engaged in the transfer business for the public generally, is not a delivery to the consignee. *White v. Mitchell*, 38 Mich. 390; 1 Jones on Liens, sec. 929; *Conrad v. Fisher*, 37 Mo. App. 352; 24 Cent. Law Jour. 389; *Mason v. Wilson*, 43 Ark. 172. Although the agent may be that of the buyer, hired and paid by him, if the agent's duty is simply that of a forwarder, the right of stoppage still remains. 1 Jones on Liens, secs. 908, 909, 922. To constitute a constructive delivery to an agent for the consignee, there must be a new contract of holding by which the agent is empowered to keep the goods for a new purpose, other and different from that of transit to the buyer. *Langstaff v. Stix*, 60 Am. Rep. 49, and notes; *Farrell v. Railroad*, 11 Am. St. Rep. 760. Delivery of goods into warehouse at place of destination of carrier or any middleman is not delivery to buyer. *O'Neil v. Garrett*, 4 Iowa, 480; *Callahan v. Babcock*, 21 Ohio St. 281. The burden of showing a new contract with the railroad company by which it held the goods in storage was upon the defendant, and he failed to make any such proof. The right of stoppage in transit continues if the buyer refuses to take the goods. *Tufts v. Sylvester*, 1 Am. St. Rep. 303; *Racker v. Donovan*, 19 Am. St. Rep. 92, and note. And it is not defeated by an attachment of the goods by the buyer's creditor. *Estey & Camp v. Truxell*, 25 Mo. App. 238; 24 Cent. Law Jour. 390; 32 Cent. Law Jour. 365.

ROMBAUER, P. J.—The defendant sheriff seized the goods in controversy by virtue of a writ of attachment, issued against the property of the Springfield Dry-

Goods & Clothing Company, at the instance of one of its creditors. The plaintiffs thereupon replevied the goods from the sheriff, claiming that they sold the goods to the attachment defendant on credit in New York City, to be delivered at Springfield, Missouri; that the transit of the goods had not terminated when they were attached, and that they exercised their right of stoppage *in transitu* by taking them from the sheriff on the writ of replevin. The trial of the cause resulted in a verdict for the plaintiffs, and the defendant now complains that this result was brought about by errors committed by the court in admitting incompetent evidence against him, and by erroneous views taken by the court of the applicatory law, as shown by its instructions.

The first point made arises in this manner: The defendant claims that the evidence admitted to show that the goods were sold by the plaintiffs to the attachment defendant was hearsay, and should have been rejected, and that, rejecting this evidence, no valid sale of the goods by the plaintiffs to the attachment defendant was shown. This argument loses sight of the fact that, if no sale were shown, the defendant would have no defense at all, as the prior ownership of the goods by the plaintiffs is conceded. In that event, the defendant would simply stand in the position of having levied a writ, directed against a third person, on the goods of the plaintiffs without any excuse whatever, and a judgment for plaintiffs would be a mere conclusion of law upon conceded facts. The objection, therefore, deserves no serious consideration.

In order to pass intelligently on the error complained of, touching the misdirection by instruction, a brief statement of the evidence of both parties is essential. Touching the following facts there is no controversy: The plaintiffs sold the goods to the

attachment defendant on credit, believing that it was
solvent, but, when the goods arrived at Springfield, the
attachment defendant was insolvent, and the plaintiffs,
learning of the fact, endeavored to stop the delivery of
the goods before their transit ended.  The only sub-
stantial controversy between the parties is whether the
transit had actually ended when the goods were
attached by the sheriff.

On that question the plaintiffs gave evidence
tending to show that one Johnson was a private carrier
or transfer man  in Springfield, and had a standing
order from the attachment defendant to bring all
goods, consigned to it, from the railroad depots to its
store; that Johnson had similar orders from other
merchants, in fact was a transfer man for the public;
that he had no *special orders* touching these goods, but
paid the freight on them and intended to take them to
the attachment defendant's store, simply because he
found them at the railroad depot consigned to it; that
his custom was to advance all freight charges, that is,
pay them to the railroad agent when he took the goods,
and collect such charges from the consignees, with his
own charges superadded, when he delivered the freight
to the consignees; that, according to his recollection,
he did not take this box to the store, but took another
box shipped by one Shoninger to the same consignee,
and upon arrival at the store was told by the con-
signee that it would not receive any more goods, and
thereupon he took the Shoninger box back to the
railroad depot, and the railroad agent returned the
freight charges to him.  Part of the evidence offered
by the plaintiffs tended to show that Johnson took
both boxes to the store of the attachment defendant,
who refused to receive them on account of a recent fire
in the store, and told Johnson to take them back to
the depot.  There was also some evidence for the

plaintiffs, that the attachment defendant might have refused to receive the goods because their billing did not correspond to order, and that Johnson had no special authority from it to pay the freight charges on these goods.

. The defendant gave evidence tending to show, in addition to the above facts, that Johnson had paid freight on the above goods and had receipted for both parcels before they were attached; that the freight charges were afterwards paid by the attaching creditors and for that reason were refunded to Johnson; that, when the attaching creditors paid the freight charges, they did not know that Johnson had paid them already; that, when the goods were attached, they were stored at the railroad warehouse.

This being in substance all the evidence bearing on the point in issue, the court declared the law as follows: *First.* Upon the request of the plaintiffs: "That, before a delivery to an agent can be held to be a delivery to the buyer, such delivery must be to some one authorized to act in reference to the goods, otherwise than as a forwarder for the buyer, and that, if you find from the evidence in this case that M. M. Johnson was engaged in the transfer business in Springfield, Missouri, and was not in the employ of the said Springfield Dry-Goods & Clothing Company, and that the railroad companies doing business in Springfield, Missouri, and having depots for the reception and delivery of goods, were instructed by said Springfield Dry-Goods & Clothing Company to let Johnson have their freight, and he was to receive the goods to haul or transfer the same to said Springfield Dry-Goods & Clothing Company's place of business, and had no other authority, then a delivery of said goods to Johnson was not a delivery to the said Springfield Dry-Goods & Clothing Company."

*Second.* Upon the defendant's request: "The court declared the law to be that, if the court sitting as a jury finds from the evidence that plaintiff shipped the goods in question from New York, consigned to the Springfield Dry-Goods & Clothing Company at Springfield, Missouri, and, after their arrival at the Phelps Avenue depot, the consignee by its agent received the same and paid the freight, then hauled them to the storehouse or salesroom of said consignee, and the consignee directed their agents to return them to the depot, because they were not then in condition to receive them on account of a recent fire, having no place to put them, and they were thus and for this reason returned to said depot, and there received and held by the depot or railroad agent for the consignee, and while so held were attached in the suit of Hargadine & McKittrick Dry-Goods Company, then the issues must be found for the defendant."

*Third.* Of its own motion: "If the court finds from the evidence that the goods in question were consigned by the plaintiff to the Springfield Dry-Goods & Clothing Company at Springfield, Missouri, and that, after their arrival at the railroad depot at Springfield, they were receipted for and the freight paid by the consignee or its agent, the verdict must be for the defendant. But, in order to constitute an agent as above specified, the agency must be for some purpose other than forwarding goods to consignee's actual possession."

. The law governing the vendor's right to stop the delivery of the goods while in transit is very simple, but its application to particular facts is often difficult; nor can the law as declared by the courts in individual cases be understood, unless the circumstances to which it is applied are critically examined. It may be stated

as a general proposition that the right of the unpaid vendor to stop goods *in transitu* upon the bankruptcy or insolvency of the vendee, is not defeated by the mere arrival of the goods at their destination. The *transitus* is not at an end until they have come to the vendee's actual possession or his constructive possession by a delivery to his agent. If in the case at bar Johnson, the local carrier, was the agent of the attachment debtor, with full authority to receive and receipt for the goods, then upon the goods being delivered by the common carrier to Johnson, and upon his receipting for them, the transit was at an end. There is no pretense that the goods were to be delivered by the common carrier at the store, or at any other place but its depot, nor is there any pretense that Johnson, in receiving and receipting for the goods, acted as agent of the common carrier. In *White v. Mitchell*, 38 Mich. 390, and in *Inslee v. Lane*, 57 N. H. 454, where a delivery to a local carrier under similar circumstances was held not to terminate the transit, the vendee had absconded before the arrival of the goods, and it was held that his absconding at once put an end to the local carrier's authority to receipt for him. In *Mason v. Wilson*, 43 Ark. 174, the vendee had notified the vendor before the arrival of the goods that he would not receive them on account of insolvency, which was held to terminate the authority of a local carrier to receive them for the vendee under a general authority to receive and receipt. The case of *Macon & Western Ry. Co. v. Meador Bros.*, 65 Ga. 705, was decided, under a clause of the Georgia code, which provides that the right of stoppage *in transitu* continues until the vendee obtains *actual possession* of the goods. Neither of these cases cited by the respondent in support of his instruction has a tendency to vindicate the correctness of that instruction, and we must conclude that that instruction under the evidence

in this case was incorrect and misleading, as was also the last sentence in the instruction given by the court of its own motion.

If Johnson, as the evidence tends to show, was the agent of the attachment defendant having general authority to receive and receipt for its goods, which arrived at the depots in Springfield, where such goods were deliverable, then Johnson's receiving the goods and receipting for them was *prima facie* a termination of their transit. If such general authority did not extend to this particular case, the onus of showing that fact rested with the plaintiffs. The plaintiffs might have shown that fact, either by showing that the attachment defendant refused to receive the goods owing to its insolvency, or that it refused to receive the goods because they were not properly billed, and in either event such evidence would have tended to show that the transit had not ended. But a refusal to receive the goods temporarily, on account of any inconvenience to place them in the store, had no tendency to show that their transit had not ended. Their return to the common carrier under such circumstances left them in the hands of the carrier as a warehouseman after the termination of the transit and subject to the dominion of the attachment debtor.

For error in the plaintiff's instruction the judgment must be reversed, and the cause remanded. All the judges concur.