HENRY LEWIS *et al. vs.* PAUL SHARVEY.

Argued July 9, 1894. Affirmed Aug. 16, 1894.

No. 8855.

**When the right to stop goods in transit ends.**

When goods have arrived at the destination contemplated by the vendor and vendee at the time of the sale and consignment, and a new transit, to a new destination, is put in operation by the latter, then the original transit is ended, and likewise the right of stoppage *in transitu.* But an order for delivery of the goods at a particular warehouse or point within the original destination cannot ordinarily be a direction to start the goods to another destination.

**Until the carriage and delivery are ended the right of stoppage continues.**

Delivery of the goods to another agent, in the course of the transit, merely to perform some act in reference to forwarding them, will not affect the vendor's right of stoppage.

**On the facts stated, the right to stop the goods had not ceased.**

If, in the hands of a carrier or middleman, they require new orders to put them again in motion, and give them another, substantive (that is,

independent) destination, or if, without new orders, they must continue stationary, then, as a general rule, the delivery is complete, and the right of lien has expired. *Held*, upon the facts in the case at bar, that the vendor's right of stoppage in transitu had not expired when attempted to be exercised.

Appeal by defendant, Paul Sharvey, sheriff of St. Louis County, from an order of the District Court of that county, *J. D. Ensign*, J., made February 24, 1894, denying his motion for a new trial.

The plaintiffs, Henry Lewis and Hetherington Hodgson of Glendive, Mont., on July 15, 1892, sold to Enoch Salt and Enoch J. Salt of West Superior, Wis., doing business there under the name of West Superior Woolen Mills Co., 15,950 pounds Montana wool at eighteen and one fourth cents per pound free on board cars at Glendive, Mont. to be shipped that day by rail to the purchasers, at Duluth. Plaintiffs drew their draft that day on West Superior Woolen Mills Co. for the price, $2,910.87 payable thirty days after sight and sent it by mail to the State Bank of Wisconsin at West Superior where it was accepted July 20, by the vendees, and it remained there for collection, but it was never paid. The wool was shipped the same day over the Northern Pacific Railroad in car No. 638 consigned to "West Superior Woolen Mills Co. at Duluth, Minn." The two Salts were then insolvent, but plaintiffs did not know it. The wool arrived at the freight yard on Rice's Point in Duluth at noon on July 21, 1892, where it remained until the defendant, Paul Sharvey, Sheriff of St. Louis County, seized it July 26, 1892, at eight o'clock in the evening upon a writ of attachment issued to him for service from the District Court of that county in an action wherein the Farmers' National Bank of Portsmouth, Ohio, was plaintiff, and Enoch Salt and Enoch J. Salt were defendants.

He placed his deputy in charge of the car of wool and at one o'clock in the night it was transferred to a track of the St. Paul and Duluth railroad to be taken to the warehouse of T. B. Hawks & Co. reached by that track. During the afternoon of July 27, the car was moved to the warehouse and the wool unloaded by the sheriff. He paid the freight and stored the wool in his own name as sheriff. When the wool had arrived at the yards on Rice's Point, F. W. Swindell, chief clerk of the Northern Pacific Railroad Company in its freight office at Duluth, telephoned the West Superior Woolen Mills

Co. in the morning of July 22, that the wool had arrived and asked if he should send it over to West Superior, and received reply, "No, Keep it in Duluth." On July 26, at half past one o'clock in the afternoon, J. I. Thomas, freight agent at Duluth of the Northern Pacific Railroad Company received by mail a letter from West Superior Woolen Mills Co. dated that day at West Superior, saying "Please deliver to T. B. Hawks & Co. all wool on your track consigned to us."

On August 6, 1892, the plaintiffs gave notice to T. B. Hawks & Co. and to the sheriff, of their claim, and tendered to the sheriff the freight he had paid and demanded the wool. He refused and they commenced this action of replevin to recover possession of the wool or its value if possession could not be had. The Farmers' National Bank took the wool, removed it from the state, sold it, indemnified the sheriff, and defended the action. A jury was waived, the court made findings that no delivery of the wool was made by the Northern Pacific Railroad Company to the West Superior Woolen Mills Co., that when the sheriff took it on the writ of attachment the wool was still in transit and plaintiffs had the right to stop it, that plaintiffs then had a vendor's lien on the wool for the price, that by defendant's seizure they were deprived of this right of stoppage in transit and damaged in the amount of the draft and interest, and ordered judgment accordingly. Defendant moved for a new trial. Being denied he appeals. There were three other cases in the trial court, all involving substantially the same question, awaiting a determination of the question in this.

*Henry S. Mahon*, for appellant.

At the time of the sheriff's levy under the writ of attachment, the plaintiff's right to stop the wool in transit had been lost. The wool was in the constructive possession of Enoch Salt and his partner prior to eight o'clock in the evening of July 26, and prior to the levy of the attachment, and plaintiff's right to stop the goods in transit was lost before the levy was made. For five days prior to the levy the goods had been held by the Northern Pacific Railroad Company, not as a carrier to the destination originally contemplated by the vendors of the wool, but as the agent of the vendees for the mere purpose of custody and until the vendees should give new orders as to the disposition of it. Under these circumstances there

was a constructive delivery to the vendees sufficient to terminate plaintiff's right of stoppage in transit.

By reason of the instructions given July 22, to hold the wool in Duluth till further orders, the relation of the Northern Pacific Railroad Company to the goods as carrier ceased on that morning and the relation of warehouseman or of agent to hold on account of the vendee supervened so as to terminate the transit, and with it the right of stoppage *in transitu.* *Guilford* v. *Smith*, 30 Vt. 49; *Rowe* v. *Pickford*, 8 Taunt. 83; *Langstaff* v. *Stix*, 64 Miss. 171; *Hall* v. *Dimond*, 63 N. H. 565; *Foster* v. *Frampton*, 6 B. & C. 107; *Allen* v. *Gripper*, 2 Cromp. & J. 218; *Ex parte Barrow*, 6 Ch. D. 783.

By the written request to deliver to T. B. Hawks & Co. the character of the possession of the Northern Pacific Railroad Company was again changed on the afternoon of July 26, to that of a carrier to a new destination not contemplated at the time of the original consignment and with which the vendor had nothing to do, and the transit was thereby ended. *Dixon* v. *Baldwen*, 5 East, 175; *Cabeen* v. *Campbell*, 30 Pa. St. 254.

The wool was consigned over the Northern Pacific Railroad to the company's station at Duluth and no obligation rested upon the railroad company to make, nor could it have been contemplated that the railroad company would make, a delivery of the wool at any point off its own line. *Porter* v. *Chicago, &c., R. Co.*, 20 Ill. 408; *Vincent* v. *Chicago, &c., R. Co.*, 49 Ill. 33; *People* v. *Chicago & A. R. Co.*, 55 Ill. 95.

*S. T. & Wm. Harrison*, and *Knowles, Dickinson, Buchanan, Graham & Wilson*, for respondents.

At the time the defendant seized and took the wool plaintiffs had under the law a right to the possession of it as unpaid vendors, the property being in transit and the vendees being insolvent. Such right existed in their favor to enable them to realize from the property the amount of the unpaid purchase price. 2 Kent Comm. 540.

But the mere arrival of the goods at their destination and unloading and placing them in the warehouse of the railroad company does not of itself terminate the transit nor put an end to the vendor's right of stoppage. As long as they remain in the possession of the

carrier, as such, the right continues.    There may be cases where the carrier becomes the agent of the vendee and holds the goods as a warehouseman for him, but such agency will not be implied from his original employment, and until some agreement or understanding to that effect is affirmatively shown, he will be presumed to retain them in his original capacity as a carrier.    *Symns* v. *Schotten*, 35 Kan. 310; *Calahan* v. *Babcock*, 21 Ohio St. 293; *Buckley* v. *Furniss*, 15 Wend. 137, 17 Wend. 504; *Covell* v. *Hitchcock*, 23 Wend. 611; *Hoover* v. *Tibbits*, 13 Wis. 79; *Sherman* v. *Rugee*, 55 Wis. 346; *Harding Paper Co.* v. *Allen*, 65 Wis. 570; *Greve* v. *Dunham*, 60 Ia. 108; *Harris* v. *Pratt*, 17 N. Y. 249; *Inslee* v. *Lane*, 57 N. H. 454; *Macon & W. R. Co.* v. *Meador*, 65 Ga. 705; *Chandler* v. *Fulton*, 10 Tex. 2; *White* v. *Mitchell*, 38 Mich. 390.

COLLINS, J.    The question to be considered, and which will dispose of this appeal,—although others have been raised,—is whether plaintiffs were entitled to exercise the right of stoppage *in transitu* at the time they attempted to exercise such right over certain wool which they had sold and shipped to a copartnership doing business at West Superior, Wis.; the attempt being made at Duluth, Minn., a few miles distant.    The main facts, fully justified by the evidence, are these: The wool was sold at Glendive, Mont., and shipped by rail, over the Northern Pacific road, on July 15, 1892, consigned to the purchasers, at Duluth.    It arrived in the Duluth freight yard on July 21st, and on the morning of the 22d the freight clerk at the railroad office telephoned the consignees, at West Superior, of its arrival, in addition to other car loads already there, and asked, "must all be sent over to West Superior?"    The reply was, "No, keep it all at Duluth."    On July 26th, about noon, the freight agent in charge received a letter from the consignees directing that all wool on the tracks at Duluth consigned to them be delivered to T. B. Hawks & Co., a Duluth firm. There were no facilities for unloading the wool while the car containing the same remained in the freight yard of the Northern Pacific Railway Company.

On the evening of July 26th, and while the car was in said yard, the wool was seized by the sheriff of St. Louis county (this appellant), by virtue of a writ of attachment duly issued in an action brought against the consignees.    His deputy remained with the car, and on

the morning of July 27th it was transferred to the tracks of the St. Paul & Duluth Railway Company, hauled to the warehouse of Hawks & Co., the car was opened, and its contents placed in the warehouse by said sheriff, Hawks & Co. receipting to him for the same. The sheriff paid the freight charges on August 3d. On August 6th, plaintiffs' attorney made the affidavit prescribed by 1878, G. S. ch. 66, § 154, served the same on the sheriff, and demanded a return of the property, at the same time tendering the amount which had been paid as for freight charges, which demand was refused. Thereupon, this action, which is for conversion, was brought. At the time of the sale of the wool the consignees (purchasers) were, and ever since have been, insolvent, of which fact plaintiffs had no knowledge until July 28th. In addition to the above facts, the court, trying the case without a jury, found that, when seized and attached by the sheriff, the wool was still in transit, and had not been delivered to the consignees, and was not in their actual or constructive possession. Judgment was ordered in plaintiffs' favor, and defendant appeals from an order denying a new trial.

The law in respect to the right of stoppage *in transitu* is well settled, but the difficulty usually comes, as in this case, in its application. The right is that which a vendor, when he sells goods on credit to another, has of recovering or regaining possession thereof while they are in the hands of a carrier or middleman, in their transit to the consignee or vendee, and before they arrive into his actual possession, or at the destination he has appointed for them, on his becoming bankrupt or insolvent. It is based on the plain reason of justice and equity that one man's goods should not be applied to the payment of another man's debt, and the right to recover or regain possession before they reach the buyer's possession is undisputed. We have therefore to inquire here whether the wool was in transit when attached, or had passed into the actual or constructive possession of the consignee.

Appellant contends that the relation of the Northern Pacific Railway Company to the goods, as carrier, ceased on the morning of July 22d, when it received the message by telephone to keep the same in Duluth. There is nothing whatever in this. The car was on the yard tracks of the railway company, where there were no facilities for unloading, and where the contents could not be delivered to the con-

signees.   The inquiry was, must the car be forwarded to Superior? and was of no greater import than if the railway company had asked where in Duluth must the car be sent for delivery of its contents. The railway company was still the carrier, holding the car for the purpose of transmission to the consignee.   The relations between the latter and the company had not changed in the least.   It is evident from the inquiry that the company regarded itself as a carrier, ready to deliver at such place as the consignees might direct; and it is equally as evident from the answer that the consignees were not ready for delivery, but wished the car held by the company in its capacity as a common carrier.

It is further contended by appellant's counsel that by virtue of the letter of July 26th, in which the consignees directed that the wool be delivered to Hawks & Co., and the carrier's acquiescence therein, the character of the possession of the Northern Pacific Railway Company was again changed to that of a carrier to a new destination, not contemplated at the time of the consignment, and with which the plaintiff, vendors had nothing to do, and that thereby the transit was ended.   There is nothing in the letter which indicated that a new destination was contemplated, or that a delivery other than that contemplated by the railway company when receiving the wool for shipment was intended.   The consignment was to Duluth generally, and obviously it was not supposed that the obligation of the carrier would be terminated when the cars came into the yards of the company in that city.

If car loads of wheat had been shipped in the same general way, an order, after their arrival in the yard, to deliver at some particular elevator, would not be regarded as a new destination, but simply as the point of delivery within the original destination.   The railway company, when receiving the car load of wool at Glendive, consigned to Duluth, knew that in the usual and ordinary course of business they would be required to switch or deliver the car at some convenient place or building for unloading,—not a new destination, but merely the point of delivery,—while the consignees understood that some particular place or point of delivery in Duluth would have to be designated by them.   It is true that it has often been held that when goods have arrived at the destination contemplated by the vendor and vendee at the time of the sale and consignment, and a

new transit to a new destination is put in operation by the vendee, then the original transit is ended, and likewise the right of stoppage *in transitu.*

But an order for delivery of the goods at a particular warehouse or point within the original destination cannot ordinarily be a direction to start the goods for another destination, for these words express the idea of a second transit.   The distinction between directions as to the carriage for part of the distance the goods are to be taken, with delayed directions as to the carriage for the balance of the way, and the impressing upon the goods of orders for a new motion and another destination, is well pointed out in *Harris* v. *Pratt,* 17 N. Y. 267.   It is the original destination, as contemplated by the purchaser, which is to be taken into consideration.   *Whitehead* v. *Anderson,* 9 Mees. & W. 534.   And delivery to any other agent in the course of the transit, merely to perform some act in reference to forwarding the goods, will not affect a vendor's right of stoppage. *Harris* v. *Pratt, supra.*   The general rule is well stated in *Cabeen* v. *Campbell,* 30 Pa. St. 259, thus:   If, in the hands of the middleman, they require new orders to put them again in motion and give them another, substantive destination; if, without new orders, they must continue stationary,—then the delivery is complete, and the lien has expired.   Surely, it cannot be said that another, substantive (that is, independent) destination had been given to the goods by an order of the consignees on the middleman to deliver them to another firm in the same city, instead of to themselves.

Nor can it be successfully urged that the goods would have remained stationary without new orders, for delivery could not have been made to the consignees in the railroad yards, where they were when the agent received the letter of July 26th.   The trend of the authorities in this class of cases may be seen by an examination of *Harris* v. *Tenney,* 85 Tex. 254, (20 S. W. 82;) *Macon &c. Railroad Co.* v. *Meador,* 65 Ga. 705; *Inslee* v. *Lane,* 57 N. H. 454; *White* v. *Mitchell,* 38 Mich. 390; *Scott* v. *Grimes,* 48 Mo. App. 521; *Farrell* v. *Richmond & D. Ry. Co.,* 102 N. C. 390, (9 S. E. 302.)

The order to deliver to Hawks & Co. was of no more consequence, as affecting or terminating the vendors' rights, than would have been an order to deliver at the consignees' warehouse, or at some

other convenient place for unloading the car, in the city of Duluth. Nor, on the facts, does the claim that the railway company acquiesced in the order cut any figure. The most to be said of this claim is that by the findings it appears that after receiving the letter the freight agent gave directions to have the car transferred to the tracks of the St. Paul & Duluth Railway Company, which tracks connected with the warehouse of Hawks & Co., and for delivery to them. Whether this was before or after the wool was attached, if at all material, was not found.

As intimated at the outset, the other points raised by appellant's counsel do not require discussion. None are meritorious.

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 1096.)