THE OCEAN STEAMSHIP COMPANY v. EHRLICH & BRO.

Where, after the freight and wharfage were paid and the bills there-
for receipted, the bill of lading was exhibited but not assigned, and
the goods, though upon the wharf, were not actually delivered
by the carrier to the consignee, the right of stoppage *in transitu*
was not defeated by a sale to a *bona fide* purchaser for value, pay-
ment of the purchase money, delivery of the freight and wharf-
age bills together with an order upon the carrier for the goods,
and actual delivery of a part of the goods in pursuance of such
order. The goods remaining undelivered when the right of stop-
page was exercised were subject to the right.
January 11, 1892.

Stoppage *in transitu*. *Bona fide* purchaser. Carriers.
Before Judge HARDEN. City court of Savannah. May
term, 1891.

Reported in the decision.

LAWTON & CUNNINGHAM, for plaintiff in error.
GARRARD & MELDRIM, *contra.*

BLECKLEY, Chief Justice.

The right of stoppage *in transitu* was exercised by
certain vendors and consignors of goods sold and con-
signed to Epstein & Wannbacher under the following
circumstances: The goods were shipped from New York
to Savannah, the carrier being the Ocean Steamship
Company. They arrived and were put on the wharf
of the steamship company at Savannah. The freight
and wharfage had been paid, the bills therefor were
receipted, and nothing remained to be done to change
the actual possession from the carrier to the consignees
except to remove the goods from the wharf. It was
the custom of the carrier to deliver goods thus situated
upon presentation of the receipted bills for freight and
wharfage, without requiring bills of lading to be pro-
duced. Epstein & Wannbacher, the consignees, sold the
goods to Ehrlich & Brother, exhibiting to them the bills
of lading, but executing no assignment of the same. In

lieu of such assignment they delivered to them the receipted freight and wharfage bills, together with an order upon the carrier for the goods, and Ehrlich & Brother paid the agreed purchase price. Under this order a portion of the goods were delivered to their drayman and hauled away. Upon the following day the drayman returned for the residue, but as to this residue the right of stoppage *in transitu* had been exercised on that morning by the consignors; and for this reason the carrier refused to make delivery to Ehrlich & Brother. This suit, brought by Ehrlich & Brother against the carrier, is the result of such refusal.

Did the consignors stop too late, or were they in time? The provisions of the code on the subject are as follows:

"The right of stoppage *in transitu* exists whenever the vender in a sale on credit seeks to resume the possession of goods while they are in the hands of a carrier or middle man, in their transit to the vendee or consignee, on his becoming insolvent. It continues until the vendee obtains actual possession of the goods." (§2075.)

"If the goods are delivered before the price is paid, the seller cannot retake because of failure to pay; but until actual receipt by the purchaser the seller may at any time arrest them on the way and retain them until the price is paid. If credit has been agreed to be given, but the insolvency of the purchaser is made known to the seller, he may still exercise the right of stoppage *in transitu*." (§2649.)

"A *bona fide* assignee of the bill of lading of goods for a valuable consideration, and without notice that the same were unpaid for, and the purchaser insolvent, will be protected in his title against the seller's right of stoppage *in transitu*." (§2650.)

Under these provisions nothing defeats the right of stoppage but actual possession in the vendee, or *bona fide* assignment of the bill of lading. In this case, as to the

goods remaining upon the wharf, there was neither. The wharf was the wharf of the carrier, and the order for delivery recognized that the goods were still in the carrier's custody, as indeed they were; nor did a delivery of part of them operate to change the actual possession of the residue. No doubt the purchasers from Epstein & Wannbacher acquired title to the whole lot as against them, but this title was acquired as they held it, subject to the right of stoppage by the consignors. The actual possession of the goods not removed from the wharf was certainly never in Epstein & Wannbacher, and what they did not have they could not confer on their vendees. The latter, by means of their purchase, acquired the title and the right of possession, and by means of the order of delivery they intended and expected to derive actual possession from the carrier; but this was accomplished only as to the goods not stopped. It failed of accomplishment as to those which were stopped. As the consignors were not too late relatively to the consignees, they were not too late as to purchasers from the consignees who had not obtained actual possession. Confessedly there was no assignment of the bills of lading. If these bills had been assigned, that would have been equivalent to an actual delivery of the goods. The law recognizes no substitute for such assignment. The parties sought to make a substitute for it by delivering the receipted bills for freight and wharfage; but as to the right of stoppage *in transitu* neither this substitute nor any other will avail. The custom of the carrier to dispense with the production of bills of lading, and to deliver to the holders of receipted bills for freight and wharfage, can in no wise modify or qualify the right of stoppage *in transitu*. This right is regulated by law, and is terminated or defeated only in the ways which the law recognizes.

The court erred in not granting a new trial.

*Judgment reversed.*