BRANAN BROTHERS *v.* ATLANTA AND WEST POINT RAILROAD COMPANY *et al.*

The right of stoppage in transitu of goods sold on a credit, when the consignee is insolvent, exists against such consignee and all purchasers from him, until there has been an actual delivery of the goods to the consignee or to a purchaser under his order; and until such delivery has been made and possession of the goods obtained, the title of a bona fide purchaser from the consignee, without notice, can only be made good against the exercise of such right by an assignment of the bill of lading.

Argued May 4, — Decided July 19, 1899.

Trover.    Before Judge Harris.    Troup superior court. November 17, 1898.

*Kontz & Conyers* and *D. J. Gaffney*, for plaintiffs.

LITTLE, J.  Branan Brothers instituted an action in trover against the Atlanta & West Point Railroad Company and C. V. Truitt, to recover ten boxes of tobacco.    The evidence made substantially the following case:    Spencer, Traylor & Company sold to Cunningham, a merchant in LaGrange, ten boxes of manufactured tobacco on a credit, and delivered the same to the Richmond & Danville R. R. Co. at Danville, Va., to be forwarded to Cunningham, taking from the railroad company an ordinary bill of lading, which the consignors transmitted

to the consignee.   The tobacco arrived in LaGrange over the
Atlanta & West Point R. R., and was placed in the warehouse
of the company for delivery.   Cunningham became insolvent,
and was indebted to the firm of Branan Bros. in the sum of
$176.   A member of that firm called on Cunningham for the
payment of the debt; the latter proposed to pay the bill with
the tobacco, which was then in the warehouse of the railroad
company and had not been delivered.   The proposition was
accepted.   Cunningham gave an order on the agent of the At-
lanta & West Point R. R., to deliver to C. I. Branan the to-
bacco then in the carrier's possession, consigned to him, being
the tobacco which had been shipped by Spencer, Traylor & Co.
At the time of the delivery of the order, Cunningham also
delivered to Branan Bros. the bill of lading for the tobacco, which
was an ordinary contract of affreightment, specifying the name
of the consignor and the goods shipped, and stipulating that
they were to be transported to LaGrange and delivered to Cun-
ningham.   There was no endorsement or assignment of the
bill of lading, nor did Branan Bros. know that the tobacco had
not been paid for.   After receipt of the order and bill of lad-
ing, the representative of the firm presented the order and bill
of lading to the agent of the railroad company, paid the freight
on the same, went to the place in the depot where the tobacco was
deposited, put his hands upon it and told the agent that he de-
sired to mark it to his firm at Atlanta.   The agent said that
he would take charge of it for Branan Bros. and ship it to At-
lanta, consigned to that firm as directed, and in pursuance of
such understanding gave to Branan Bros. a receipt in the fol-
lowing words: "Atlanta & West Point R. R., LaGrange, 4/21/
92.   Received from Branan Bros. ten boxes tobacco, 550.
Consignor, Branan Bros.   Destination, Atlanta, Ga.   A. R.
Ravenscroft, Agent."   The purchase was in payment of an an-
tecedent debt, and the price was reasonable.   Cunningham
did not go to the depot with the representative of the firm.
Later on in the day, and while the tobacco was in the ware-
house awaiting shipment to Atlanta, Spencer, Traylor & Co.
notified the railroad company not to deliver the tobacco to Cun-
ningham, but to deliver the same to Truitt, one of the defend-

ants in error.   This was done, and the action was brought
by Branan Bros. to recover the tobacco.   On the trial the jury,
under the charge of the court, rendered a verdict in favor of the
defendants.   A motion for a new trial was made on several
grounds, and overruled.   The plaintiffs excepted.   A number
of grounds are set out in the motion for a new trial; but inas-
much as the case turns upon the question of a proper construc-
tion of the law regulating a vendor's right of stoppage in
transitu, we find it more satisfactory to discuss and apply to
the facts of the present case the rules of law which govern
such stoppage, than to formally pass upon the several grounds
of the motion.

There are several definitions of this right given by text-
writers, as well as made by adjudicated cases, which we have
examined with some interest.   Chancellor Kent, in the sec-
ond volume of his Commentaries, p. 702, defines the right of
stoppage in transitu to be that which the vendor has, when he
sells goods on credit to another, of resuming possession of the
goods while they are in the possession of the carrier or mid-
dleman in the transit to the consignee or vendee and before
they arrive into his actual possession or the destination he has
appointed for them, on his becoming bankrupt and insolvent.
The Supreme Judicial Court of Massachusetts, 131 Mass. 457,
declares that the right of stoppage in transitu is an equitable
extension, recognized by the courts of common law, of the
seller's lien for the price of goods of which the buyer has
acquired the property but not the possession.   Mr. Hutchinson
in his Law of Carriers, § 409, says that this right is based on
the plain reason of justice and equity, that one man's goods
shall not be applied to the payment of another man's debts,
and that if after the vendor has delivered the goods out of his
own possession, and has put them into the hands of the car-
rier for delivery to the buyer, he discovers that the buyer is in-
solvent, he may retake the goods, if he can, before they reach
the buyer's possession, and thus avoid having his property ap-
plied to paying debts due by the buyer to other people.   An
interesting discussion of the seller's right of stoppage in transitu
is found in Professor Burdick's Treatise on the Law of Sales

of Personal Property, p. 217.    This author declares that this right is not founded on any contract between the parties, nor on any ethical principle, but upon the custom of merchants; that while it is analogous to the right of lien, the two differ in some important respects. That is, the right of lien is not available unless the seller is in possession of the goods in the character of an unpaid former owner, and this right is determined as soon as the buyer or his agent lawfully obtains possession. On the other hand, the right of stoppage in transitu does not come into existence until the goods have passed out of the vendor's possession into the hands of a carrier for transmission. It is immaterial, however, for the purposes of this discussion, to ascertain whether the right is in the nature of a lien, or whether it arises from the custom of merchants.    Certainly it exists under certain well-defined rules and regulations, and it is a right which is favored by the courts.    It is essential, however, to the exercise of the right, that the goods should be in transit at the time.    Mr. Parsons, in his Law of Contracts (vol. 1, bot. p. 624), says that it is sometimes difficult to determine whether the goods which it is sought to stop are still in transitu, and declares that it is well settled that goods are in transitu not only while in motion, and not only while in the actual possession of the carrier, but also while they are deposited in any place distinctly connected with the transmission or delivery of them, or, rather, while in any place not actually or constructively the place of the consignee, or so in his possession or under his control that the putting them there implies the intention of delivery.    And again, on page 626 of the same volume, this author declares that they are in transit until they pass into the possession of the vendee.

Our Civil Code, § 2285, declares that the right continues until the vendee obtains the actual possession of the goods; and it is also declared in section 3552 of the same Code, that, if the goods are delivered before the price is paid, the seller can not retake because of failure to pay, but, until actual receipt by the purchaser, the seller may at any time arrest them on the way and retain them until the price is paid.    Again, it is provided by section 3553 of the same Code, that a bona

fide assignee of a bill of lading of goods for a valuable consideration, and without notice that the same were unpaid for, and the purchaser insolvent, will be protected in his title against the seller's right of stoppage in transitu. These three sections of the Code, taken together, seem to declare the proposition that until the goods actually come into the possession of the consignee the right of stoppage in transitu continues, and the only exception made is that a bona fide assignee of the bill of lading for a valuable consideration, who has no knowledge that the same have not been paid for, and the purchaser insolvent, will be protected against this right. While the cases passed on by this court which bear on this subject are few, the principles on which they were ruled are plainly and explicitly stated. In the case of *Macon and Western Railroad* v. *Meador, 65 Ga.* 705, the plaintiffs undertook to stop in transit certain boxes of tobacco which they had shipped from Atlanta to Macon, consigned to Carlos. After the goods had arrived in Macon, the treasurer of the railroad company, under an agreement with the consignee, set the tobacco aside to be sold by the company to pay past due freights, and if any balance remained, to pay the same to the consignee. The consignee having been forced into bankruptcy, the question arose whether the tobacco had been so delivered into the possession of Carlos as to defeat the right of stoppage in transitu. In dealing with this question, the court calls attention to the fact that the consignee did not go with Brantley, the treasurer, and have the boxes of tobacco set apart, but gave orders in relation to the same, and they were set apart under such orders by being moved from one part of the carrier's warehouse to another, and that actual possession was never in Carlos at all, but that possession in him was only constructive. It also calls attention to the fact that the bill of lading had not been delivered nor transferred, nor the freight paid. Under these circumstances, it was ruled that there never was any actual possession in Carlos, the consignee, nor any actual delivery to him or to anybody for him. There are a number of decisions of other courts, which, had they been followed, would have constrained the ruling that such a constructive delivery of the

tobacco as appears in the *Meador* case would have defeated the right of stoppage; but this court, in construing the principles of law contained in the three sections of the code which we have quoted above, in pari materia, held the rule to be, that the right would not be defeated until actual possession of the goods had been secured by the consignee, except only in the case of an assignee of the bill of lading, without notice that the goods had not been paid for, and the fact of the insolvency of the consignee.

That such was the construction of our code is made manifest by the ruling in the case of *Ocean Steamship Company* v. *Ehrlich*, 88 *Ga.* 502. In that case, goods were consigned in New York to be delivered to Epstein & Wannbacher at Savannah, and shipped by the Ocean Steamship Company. On arrival they were placed on the wharf of the steamship company, the freight and wharfage had been paid, and nothing remained to be done to change the actual possession from the carrier to the consignee except to remove the goods. It was shown that it was the custom of the carrier to deliver goods so placed, when the freight and wharfage were paid, without requiring the bills of lading. The consignees sold the goods to Ehrlich and exhibited to the purchaser the bills of lading, but executed no assignment of such bills. They delivered to him the receipted freight and wharfage bills and also an order on the carrier for the goods, and Ehrlich paid the agreed purchase-price. On exhibition of the order to the carrier, a part of the goods were delivered and carried away. On returning for the remainder, it was found that the consignor in New York had notified the carrier not to deliver the goods to the consignee. The carrier, acting under the notice, refused to make further delivery of the goods; and the question was, were the consignors in time? After citing the provisions of the code above referred to, Chief Justice Bleckley, delivering the opinion of the court, said: "Under these provisions nothing defeats the right of stoppage but actual possession in the vendee, or bona fide assignment of the bill of lading. . . The actual possession of the goods not removed from the wharf was certainly never in [the consignees], and what they did

not have they could not confer on their vendees. . . As the consignors were not too late relatively to the consignees, they were not too late as to purchasers from the consignees who had not obtained actual possession. . . If these bills had been assigned, that would have been equivalent to an actual delivery of the goods. The law recognizes no substitute for such assignment. . . This right is regulated by law, and is terminated or defeated only in the way which the law recognizes." It is not necessary, for a proper decision of the question which arises in the present case, to add anything to this adjudication, but an examination will show that the same principles are ruled and adhered to in very many adjudicated cases emanating from other jurisdictions. In the case of Calahan *v.* Babcock, 21 Ohio St. 281, the Supreme Court of Ohio ruled: "The right of stoppage in transitu is regarded with favor, and the engrafting of further restrictions upon the rule governing it is not warranted by public policy. The right of stoppage in transitu is extinguished only by the actual and complete delivery of the goods consigned, to the vendee or to some agent of and for him." Again, in 37 U. S. App. 268, in the case of McElwee *v.* Metropolitan Lumber Co., the Circuit Court of Appeals ruled, "No subsale during transit will defeat the right, unless the bill of lading be transferred." In the case of Loeb *v.* Peters, 63 Ala. 243, the Supreme Court of Alabama ruled: "The right of stoppage by the seller is lost, when, before it is exercised, the purchaser has sold the goods, and indorsed the bill of lading, to a subpurchaser for value in good faith." To the same effect see 86 N. Y. 167, and a large number of cases cited in 5 Lawson's Rights, Remedies, and Practice, § 2495, note 4.

The claim of the plaintiffs in error in this case is, that the sale made to them by the consignee, and the subsequent recognition of such sale by the carrier and the agreement on its part to reship the goods, was such a delivery as vested in them title to the goods free from the right of stoppage in transitu. It must be remembered, however, that nothing will defeat this right, except actual possession of the goods by the consignee, or an assignment of the bill of lading, which is a symbolic

delivery of the property. Neither of these things was done. Cunningham never did have possession of the goods. The bill of lading was never assigned by him to plaintiffs in error. It can not be doubted, under the facts which appear in the record, that Branan Brothers purchased the goods in good faith from Cunningham, the consignee, but it can not be insisted that by such purchase they obtained any better title than Cunningham, the consignee, had when the goods were delivered to the carrier in Danville, Va. The legal effect of such delivery was to vest the title in Cunningham, and it so remained, but the title which he held was subject to the right of the vendor to stop the goods before actual delivery. He could convey to the purchaser from him no more than he had; and therefore Branan Bros., taking Cunningham's title, took the tobacco subject to the right of the vendor to stop it so long as it remained in the hands of the carrier. Holbrook v. Vose, 6 Bosworth (N. Y.), 76. If it be said that the goods were not in the hands of the carrier for delivery to the consignee, the reply is, that as long as the company in any capacity, except as agent of the consignee, has control of the goods, whether carrier or warehouseman, the vendor's right is not terminated; for as long as anything remains to be done in order to complete a delivery to the consignee, that long the right of stoppage in transitu endures. 4 Elliott, R. 2395, and note 3, making reference to a large number of adjudicated cases. There had been no actual delivery of the goods either to the consignee or Branan Bros. Under the authority of the *Meador* case, supra, the delivery to the latter was constructive, not actual. Without actual delivery or the legal symbol of it, the purchaser could not defeat the right. Subject to this right, the purchaser changed the destination, to which change the carrier assented, but while in its hands as carrier, before the goods had been started to their new destination, the right to stop was exercised; and so long as they remained in the possession of the carrier and it had control over them, the right existed in the original vendor as against the consignee who had never had them, and a purchaser from them who bought subject to the right. In our judgment the court committed no error in the charge of which

complaint was made. The verdict is in accordance with the law and evidence, and the court committed no error in over-ruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring.*