2089. ORR *v.* PLANTERS PHOSPHATE & FERTILIZER CO.

1. The court's statement of the defendant's contentions was more detailed, specific, and comprehensive than was required under the issue raised by the answer, but it was for that reason favorable rather than prejudicial to her interests.

2. The fact that nicety of verbal criticism might suggest the use of a particular word, more appropriate under the circumstances than the special word or phrase employed by the judge in his charge, is not ground for new trial, where, comparing the complaint with the context, it is apparent that the sense in which the inappropriate word was used is unmistakable, and the instruction (as it must have been understood by the jury) is pertinent and correct.

3. As between the seller and the purchaser the delivery of the bill of lading amounted to a delivery of the quantity of guano called for by the bill of lading. A bill of lading is symbolic of the goods shipped. For many purposes it stands as representative of the shipment itself, and title to the goods may be transferred by the owner by means of a transfer of the bill of lading as long as the goods are in the possession of the carrier. There is an exception in some instances in favor of the consignor's right of stoppage in transitu, but generally the delivery of a bill of lading by the person who, according to the terms of the bill, is entitled to the goods will transfer his title.

4. A party can not complain of an instruction which is favorable to his contentions, even though the charge may not be nicely adjusted to the precise issue presented by the pleadings.

5. While the right of subjecting a witness introduced by the opposite party to a thorough and sifting cross-examination should not be denied or abridged, yet where the fact sought to be elicited by the question which the court refused to allow is afterwards proved, the error becomes harmless.

DECIDED JULY 19, 1910.

Complaint; from city court of Sandersville—Judge Jordan. July 2, 1910.

*Hardwick, Wright & Hyman,* for plaintiff in error.

*Evans & Evans,* contra.

RUSSELL, J. The Planters Phosphate & Fertilizer Company brought suit upon an account, against Mrs. Orr, for certain fertilizer which it alleged it had furnished her. She filed a plea setting up that she did not know the fertilizer company in the transaction, but had bought the fertilizer from B. B. Lovett Jr., individually, and pleaded, by way of set-off, an account which she claimed was due her for hauling for said Lovett. It is not necessary to say more in regard to the general grounds of the motion for a new trial than that there was a conflict in the evidence, and the verdict in favor of the plaintiff was authorized by the evidence. The testimony for the defendant, it is true, tended to show that there was an agreement that the fertilizer should be paid for by hauling, and $500 was paid to the fertilizer company by Lovett on Mrs. Orr's account; but whether this payment was made because the hauling was to be done for Lovett individually, or was assumed by him as

a member of the copartnership known as the Davisboro Lumber Company, there still remained a conflict as to what was the agreed price to be paid for the services of the teams; and it appears that there was evidence from which the jury would have been authorized to find that in any view of the case there should be no further deduction from the purchase-price of the guano on account of hauling. The real issue in the case, however, as presented by the pleadings, was whether Mrs. Orr purchased the fertilizer from Lovett individually, or from the fertilizer company through Lovett as its agent; for, as the judge correctly informed the jury, if they were satisfied from the evidence that Mrs. Orr purchased the guano from Lovett individually, there was no need for them to go further in the consideration of the case, but they should find their verdict in favor of the defendant. Naturally, if Lovett sold Mrs. Orr the guano, the fertilizer company would have no right of action, except· under some doctrine of concealed principal. The plaintiff in error assigns error upon four portions of the charge and upon one ruling on testimony.

1. It was insisted that the judge, in his charge to the jury, erred in stating that one of the defendant's contentions was "that she [the defendant] paid Lovett by doing certain hauling for the Davisboro Lumber Company and that the Davisboro Lumber Company was Byrd B. Lovett, operating under a business name; that the Davisboro Lumber Company was not a partnership, but was Lovett acting under a business name as the Davisboro Lumber Company." When this excerpt from the charge is considered in connection with its context, it does not appear that there is any merit in the assignment of error. The statement to which exception is taken follows immediately a statement that the defendant denies the indebtedness alleged in the plaintiff's petition and alleges that she never at any time purchased any fertilizer from the fertilizer company, but dealt directly with Lovett as principal, and purchased 365 sacks of guano from Byrd B. Lovett, and paid him therefor $700.85. and paid for the guano by doing certain hauling for the Davisboro Lumber Company. Then follows the explanatory statement of the judge to which exception is taken. It is true that the court's statement of the defendant's contention was more detailed, specific, and comprehensive than was required, under the issue as raised by the answer, but as the statement was in strict ac-

cord with the evidence which had been introduced in her behalf, certainly she has no right to complain.    The specific recital of each point, presented step by step in the evidence in behalf of the defendant, called the special attention of the jury to the inferences arising from the evidence in support of her defense; and for that reason, if error was committed, it was favorable to the defendant, rather than prejudicial to her interests.

2.   Complaint is made, in the second special assignment of error, that the language employed by the judge in this portion of his charge was tantamount to an instruction that the jury might arbitrarily do as it pleased in regard to the defendant's plea of set-off. We can not understand this contention.    In our opinion the exception is without merit.    After telling the jury that "there is an issue of fact between the parties in this case as to the *agreed* price of the hauling and the *agreed* value thereof," the court proceeded to tell the jury, in the excerpt to which the complaint is addressed : *"You look to the evidence submitted to you upon this issue, and determine from all the facts* the amount you will allow Mrs. Orr for the hauling done, if, under the evidence and rules of law I have given you in charge, you think she is entitled to set off the hauling account in this suit."    It is argued that by the use of the word "allow," the court turned the jury loose to do as it pleased without regard to the evidence.    The amount to be allowed Mrs. Orr, according to the judge's instructions, was to be determined by their opinion as to what was the true agreed price or agreed value of the hauling done, according as the jury might find it from the evidence, which they were charged to look to for that purpose; and as the jury must have understood the charge, the instruction was absolutely correct, even if a phrase more apt than that used, as to allowing a set-off, can be suggested.    It was no doubt plain to the jury that they were to determine, from the evidence, to what amount Mrs. Orr was entitled, if she was entitled to anything under the evidence, and, as there was dispute as to what was the contract price for the team which did the hauling, that they were first to determine from the evidence what was the true contract price.    This exception seems to us to be totally without merit. The fact that extreme nicety of verbal criticism might suggest the use of a particular word more appropriate under the circumstances than the precise word or phrase which the court employed affords

no ground for a new trial, when it is apparent, as it is here, from the sense conveyed by the instruction as a whole, that the jury could not have been misled, and that the unmistakable meaning of the charge as a whole conveyed a pertinent and correct instruction.

3. The court charged the jury, in regard to the bill of lading, which, it was testified, had been delivered to the defendant's agent: "If you find that the plaintiff delivered to the defendant a bill of lading to a car of fertilizer in this case, and the defendant accepted such bill of lading, and that such bill of lading was for a certain number of sacks, she would be liable for such amount as the bill of lading called for, if, after she accepted it, she made no claim that the guano was short." Exception is taken to this instruction, upon the ground that it is an incorrect statement of the law with reference to the liability of the defendant under the premises stated, and that there was no evidence to justify such a charge. So far as the evidence is concerned, the only dispute in regard to the bill of lading was that the defendant insisted that it was a bill of lading for a car of lumber, independent of the fertilizer transaction, while the plaintiff insisted that it was a bill of lading evidencing the receipt by the carrier of the quantity of guano therein specified; so that there was *evidence* authorizing an instruction upon the subject, and the only question is whether the law applicable to the plaintiff's contention was properly presented in case the jury found the testimony in the plaintiff's favor upon this point to be true. We find no error in the instruction. The assignment of a bill of lading constitutes a symbolic delivery of the property; and if Lovett, as agent of the fertilizer company, delivered the bill of lading for a car of fertilizer to an agent of Mrs. Orr, who was duly authorized to act for her in the premises, and she accepted it, she would be liable to the fertilizer company for the amount of guano called for by the bill of lading, in the absence of any fraud; and certainly she would be if she made no complaint. If there was a shortage in the guano, she might look to the carrier, and hold the carrier liable for the value of that portion of the shipment which the carrier failed to deliver. *L. & N. R. Co.* v. *Pferdmenges,* 8 *Ga. App.* 81 (68 S. E. 617). But so far as the fertilizer company is concerned, the delivery of the bill of lading amounted to an actual delivery of the guano itself. Upon the subject of transfer by delivery of the bill of lading, Mr.

Hale, in his work on Bailments, p. 127, says: "A bill of lading may be pledged by a mere delivery without indorsement. It is well settled that where a party consigns goods to another and thereupon draws upon the consignee for funds, accompanying the draft with the delivery of the bill of lading or shipping receipt, as collateral security for its payment, the acceptance and payment by the consignee of the draft, accompanied with the bill of lading or shipping receipt, vests in him a special property in the goods. The bill of lading in such case is a symbol of the goods, and the delivery thereof, with the intention to transfer the property in the goods, is a symbolical delivery of the goods."

See also authorities cited in footnote on p. 127 upon this subject. See also 6 Cyc. 424, 426(v). As between Lovett and Mrs. Orr the delivery of the bill of lading amounted to a delivery of the quantity of guano called for by the bill of lading. A bill of lading is symbolic of the goods shipped, and if, by the "giving" or delivery of the bill of lading, the consignee places another in a position where he can procure the shipment from the carrier (and it appears in this case that the railroad did not make any point on Mrs. Orr's right to take possession of the guano), certainly in such case the party who received the shipment by virtue of the possession of the bill of lading is in no position to insist that the assignment of the bill of lading was defective for lack of formality, or insufficient by reason of the fact that it was not reduced to writing. While bills of lading are not in a strict sense negotiable instruments (because they do not represent money), they are for many purposes representative of the shipment to which they purport to refer. It is true, as insisted by counsel for plaintiff in error, that in the case of *Branan* v. *A. & W. P. R. Co.,* 108 *Ga.* 70 (33 S. E. 836, 75 Am. St. R. 26), the Supreme Court was dealing with the consignors' right of stoppage in transitu, and it was said that where the purchaser had an assignment of the bill of lading from a bona fide purchaser, a right of stoppage in transitu would not exist; but we do not construe this as a ruling that it is indispensable that there should be in every case a written assignment of a bill of lading, in order to pass title to the shipment which the bill of lading symbolizes; because the decision in that case really turned upon the fact that the carrier had never parted with the possession of the shipment up to the time that it had received notice not to deliver.

While a bill of lading may be assigned in writing, such an assign-ment is not indispensable, for the carrier is the only party who can insist upon this formality; and if the carrier recognizes the one to whom the bill of lading has been delivered, as owner or as justly entitled to possession of the goods which the bill of lading repre-sents, it does so at its own risk; and though the consignee might complain, a holder of the bill of lading who had used it as a means of securing possession of the shipment would certainly be estopped from saying that there was no assignment. As stated in 6 Cyc. 426(v), generally the delivery of a bill of lading by the person who, according to the terms of the bill, is entitled to the goods will transfer his title. It must be remembered that the transfer of a bill of lading is not a transfer of the contract itself, but merely a transfer of the goods represented by it.

4. It is insisted that the court erred in charging the jury that "if they found the Davisboro Lumber Company was a partnership, consisting of Lovett and another person, and further found that Mrs. Orr did this hauling under these circumstances for the Davis-boro Lumber Company, she would have no right to set-off in this suit the account of the Davisboro Lumber Company for hauling." If we should consider this disjointed fragment of the charge by itself, we would adjudge it to be error, because it does not seem to be applicable to the issues presented by the pleading; but when it is considered in the light of the evidence and the manifest trend of the defendant's contention before the jury, and especially when it is considered in connection with the instruction given the jury at the close of the charge, in which the jury were told that if they found from the evidence "that Mrs. Orr did not know that the Davisboro Lumber Company was a partnership, and that she traded with Byrd B. Lovett to do this hauling for the Davisboro Lumber Company, then she would be entitled to a set-off, just as if the Davisboro Lumber Company was not a partnership," it is manifest that the instruction complained of was more favorable to the de-fendant than her plea would have authorized. And while the in-struction complained of is not adjusted to the issues explicitly stated in the pleadings, yet when it is seen that in connection with this instruction the court clearly presented in a concrete form every possible contention for every phase of the case which could legally be favorable to the defendant, it is clear that the specific objection

urged is not meritorious. The only ground of objection contained in the assignment of error is that this instruction took from the jury the question as to whether or not Byrd B. Lovett Jr., as an individual, agreed to stand liable for the amount, and allowed it to go as a credit upon the guano account as was contended by the defendant, and that it was an incorrect statement of the law, for the reason that an individual member of a partnership may become liable individually for a partnership debt, by assuming its payment, and the charge in question denied the defendant's right of recovery and set-off against Lovett, even though he had. assumed legal responsibility as an individual for the debt. Reference to the instruction, which we quoted in the beginning of this division of the opinion, shows that the court expressly charged the principle, the benefit of which it is asserted was denied the defendant.

5. It appears from the record that the counsel for the defendant in the court below asked Byrd B. Lovett, upon cross-examination, the following question: "He [Mr. Dudley] received so much for sawing the lumber, didn't he, and then he was to get so much of the profits?" The court sustained the objection to the question, and repelled the answer, upon the ground that it was irrelevant whether there was a partnership existing between Mr. Lovett and Mr. Dudley or not. We think the court's ruling was correct, because the plaintiff contended that the fertilizer was not sold by Lovett individually at all, but that the fertilizer company was the seller; and, on the contrary, the defendant insisted that B. B. Lovett individually agreed to take pay for the guano in hauling; so that whether the jury sustained the contention of the plaintiff or that of the defendant, it would seem to have been immaterial whether Lovett was in partnership or not. But if we are mistaken as to this, the error in the court's ruling was harmless, because a review of the testimony shows that the defendant afterwards proved the facts which she insisted would be shown by the answer to the question which the court refused to allow. The right of a party to thoroughly sift the witnesses of the opposite party upon cross-examination should not be abridged. While this is so, the defendant's contentions in any case are to be gathered from his answer. There is in the defendant's answer no allegation referring in any way to a partnership, nor any averment that Lovett agreed (as he would have had the right to do) to individually assume the pay-

ment of the debts of the Davisboro Lumber Company.    The whole theory of the defendant's defense was that she contracted with Lovett individually, as an original undertaking on his part, and therefore, under her answer, it was entirely immaterial to her defense whether Dudley was Lovett's partner in the Davisboro Lumber Company, or merely his employee.

In our view of the case, the trial was fair, and its result was authorized by the law and the evidence.    *Judgment affirmed.*